EDDIE TANGEN, Appellant-Appellee, Cross Appellant, *v.*
STATE ETHICS COMMISSION, Appellee-Appellant,
Cross Appellee

NO. 5626

MAY 27, 1976

RICHARDSON, C.J., KOBAYASHI, OGATA,
MENOR and KIDWELL, JJ.

OPINION OF THE COURT BY OGATA, J.

This appeal and cross-appeal are from the decision and judgment of the court below reversing a decision of the Ethics Commission of the State of Hawaii, the appellee-appellant, cross appellee (hereinafter referred to as appellant) and dismissing the charges against Eddie Tangen, the appellant-appellee, cross appellant (hereinafter referred to as appellee). Appellant had determined that failure by appellee to disqualify himself as a member of the State Land Use Commission from participation in certain proceedings before it constituted a violation of HRS § 84-14(1)(A) [Conflicts of

Interest][1] because such participation constituted official action directly affecting a labor union, the employer of appellee. This court has jurisdiction pursuant to HRS § 602-5 (Supp. 1975). We affirm.

The State Land Use Commission was created by the legislature in 1961,[2] invested with overall power to zone lands in the State, to preserve, protect and encourage the development of all such lands for those uses to which they are best suited for the public welfare. Beginning in 1962, the State Land Use Commission has classified contiguous land areas in the State into urban, rural,[3] agricultural, and conservation districts in which only certain land uses are permitted. *See* HRS § 205-2. In accordance with HRS § 205-4 (Supp. 1975), the State Land Use Commission has authority to amend the boundaries of any district upon its own initiative or upon the petition of any department or agency of the State or county or of any person who has a property interest in the land sought to be reclassified.

Appellee is an international representative of the International Longshoremen's and Warehousemen's Union (ILWU) and has been assigned to the Hawaii Regional Office of the ILWU. He receives from the ILWU compensation, as well as an annual expense allowance, which is his only source of income. As an international representative, his duties include acting as a liaison in coordinating the activities of the local unions (Local 142 representing sugar workers, pineapple workers, longshoremen, hotel workers on outer islands; and Local 160 representing security officers and guards) with the international union. Appellee is also a member of ILWU

---

[1] The State Ethics Commission found that alternatively the same conduct was a violation of HRS § 84-14(a)(Supp. 1975), which was enacted by Act 163, S.L.H. 1972. The conduct complained of, having occurred prior to the effective date of the 1972 amendment to HRS § 84-14(1)(A), could not have been a violation of the amendment. In fact, we do not see any necessity to render any opinion based on the subsequent amended HRS § 84-14(a)(Supp. 1975) since appellant in its answering brief conceded that this issue is not viable.

[2] See Act 187, S.L.H. 1961.

[3] Rural district classification was not authorized to be created until Act 205, S.L.H. 1963, was enacted by the legislature.

Local 142 and has also assisted his local union in collective bargaining negotiations. There are approximately 10,700 workers in the sugar industry and 6,800 in the pineapple industry who are members of Local 142. The total membership of the local ILWU is 24,000 members, with the international having approximately 60,000 members. Appellee has been a member of the State Land Use Commission since August 28, 1969, and has participated regularly in the activities and proceedings of that commission.

In 1968, 1970 and 1971, four petitions[4] were presented to the State Land Use Commission by four separate owners of land. Each of these petitions requested the commission to reclassify to urban districts various parcels of land located within agricultural or conservation districts. In each case where the land in question was planted in sugar it was leased to businesses in the sugar industry, except that the petition involving the land in Honolua, Maui, concerned a landowner who was not only such a lessor, but who also directly employed members of the ILWU. Each of these lessees, as well as the petitioner with respect to the Honolua land, had a collective bargaining contract with the ILWU governing wages and hours and other conditions of employment affecting its employees who were members of the ILWU, some of whom actually worked on, but owned no legal interest in, the land covered by these petitions.

Based essentially on these facts, the appellant in its decision and order[5] held that appellee violated HRS § 84-14(1)(A) or alternatively, HRS § 84-14(a)(Supp. 1975) as enacted by Act 163, S.L.H. 1972, if the amended provisions are applicable,[6] and that there is sufficient cause to file a complaint against appellee. Appellant in its findings of fact and conclusions of law concluded that the appellee is an employee of the State; that he has a substantial financial interest in the ILWU; that his participation in the State Land Use Commis-

[4] These petitions have been designated by the State Land Use Commission as LUC No. A68-197, LUC No. A70-250, LUC No. A70-268, and LUC No. A71-283.
[5] Decision and Order of appellant as amended and filed on October 25, 1972.
[6] See footnote 1.

sion proceedings with reference to these petitions constituted official action within the meaning of HRS ch. 84; that official action by the State Land Use Commission on these petitions would directly affect the employment security and welfare of some members of the ILWU, and accordingly the unions; that such action of the State Land Use Commission was of a "nature directly affecting" the growth, strength, stability of membership, and the financial status of the international and local; and that such action of the State Land Use Commission was of a "nature directly affecting" the relationships between the ILWU and the employers of its members.

Appellee appealed to the circuit court under HRS § 91-14 seeking judicial review of the pertinent record of the proceedings before appellant. The court below reversed the appellant's decision because appellant's findings were not based upon competent and substantial evidence to support the charges against appellee of violating HRS § 84-14(1)(A),[7] and also because appellant's decision was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.[8]

I.

HRS § 84-14(1)(A) provided[9] that "No employee shall . . .

---

[7] HRS § 84-31(d) contained the following language:

". . . . The commission shall not be bound by the strict rules of evidence but the commission's findings must be based upon competent and substantial evidence. . . ."

This sentence is retained in the amended version of HRS § 84-31(d)(Supp. 1975).

[8] HRS § 91-14(g)(5) (Supp. 1975) states:

"(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

\*     \*     \*     \*     \*

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or".

[9] HRS § 84-14 was amended by Act 163, S.L.H. 1972 (Supp. 1975). The amendment did not significantly change the language contained in HRS § 84-14(1)(A). See also footnote 1.

[p]articipate, as an agent or representative of a state agency, in any official action directly affecting a business or matter in which . . . [h]e has a substantial financial interest."

No question is raised that the appellee has been an employee of the State since August 28, 1969, as that term is used in HRS ch. 84. Likewise there is no dispute between the parties that appellee's participation in the activities and proceedings of the State Land Use Commission in the disposition of these petitions constituted official action. We believe that the dispositive issue lies in the meaning that we give to the phrase "directly affecting a business or matter in which . . . [h]e has a substantial financial interest."

HRS § 84-3 defines "business" and "financial interest", as follows:

"'Business' includes a corporation, a partnership, a sole proprietorship, or any other individual or organization carrying on a business.[10]

     \*   \*   \*   \*   \*

'Financial interest' means an interest held by an individual, his spouse, or minor children which is:

(A) An ownership interest in a business,

(B) A creditor interest in an insolvent business,

(C) An employment, or prospective employment for which negotiations have begun, or

(D) An ownership interest in real or personal property."[11]

The record is devoid of evidence which shows that appellee had any financial interest in any of the businesses or

---

[10] The definition of the term "business" has been amended in HRS § 84-3 (Supp. 1975) as follows:

"'Business' includes a corporation, a partnership, a sole proprietorship, a trust or foundation, or any other individual or organization carrying on a business, whether or not operated for profit."

[11] HRS § 84-3 (Supp. 1975) expands the definition of "financial interest" by the addition after subparagraph D of two new subparagraphs:

"(E) A loan or other debtor interest.

"(F) A directorship or officership in a business."

matters which were involved in the four petitions for rezoning before the State Land Use Commission. In fact, we note that HRS § 84-14(1)(A) required that appellee must have substantial financial interest in the business or matter before his official action would violate this conflict of interest provision.

We may assume and even find, based upon the record, that appellee has substantial financial interest with his employer, the ILWU; however, it must be noted that the ILWU was not the petitioner in these cases and did not own any interest in the lands sought to be rezoned by the State Land Use Commission.

Moreover, HRS § 84-14(1)(A) mandated that the proscribed act be one directly affecting the business or matter in which appellee has a substantial financial interest. The usual and ordinary definition of "directly" is "without any intervening agency or instrumentality or determining influence." Webster's Third New International Dictionary (1967). *See also General Finance Co. v. Powell*, 112 Mont. 535, 540, 118 P.2d 751, 752 (1941).

When H.B. 6, which after its enactment became HRS ch. 84, was introduced in the House of Representatives of the Fourth State Legislature, it contained a section reading as follows:

"SECTION 5. *Disqualification*. An employee shall not participate in any official action affecting a business or matter:

(a) In which he has a substantial financial interest, or

(b) By or for which a firm or association of which he is a member or an associate is engaged as legal counsel in a matter related to such action."

H.B. 6 went through the usual legislative process. The above quoted section. which became HRS § 84-14(1), was amended during this process. During this amending process the word "directly" was inserted into the first sentence after the word "action" and before the word "affecting." Thus, this deliberate modification of the language used in this portion of the section evinces legislative intent to limit the scope

of HRS 84-14(1)(A). *Compare, Fyr-Fyter Co. v. Glander,* 150 Ohio St., 118, 122-123, 80 N.E.2d 776, 779 (1948).

Action by the State Land Use Commission concerning changes in the classifications of land directly affects the petitioner who seeks changes in authorized uses of the land. In our view the effect such an action would have on persons or organizations other than the petitioner and those with financial interest in the land affected by such petition would be indirect, at the most. The agricultural workers employed by the lessees of the landowners might be indirectly affected by the decisions of the State Land Use Commission in the subject cases, but this effect would turn not only upon the initial decision by the State Land Use Commission, but also upon the intervening decisions of the landowners, *i.e.*, to continue to lease their land for agriculture or to develop the land in other ways, and the intervening decisions of the lessee-employers in response thereto, *i.e.*, to relocate, to cease business, etc.

Consequently, giving to HRS § 84-14(1)(A) an interpretation consistent with the usual meaning of the phrase "directly affecting a business or matter in which . . . [h]e has a substantial financial interest," *see* HRS § 1-14, as was contended by appellant, we hold that the action of appellee as a State Land Use Commissioner did not in any way violate that portion of the ethics code. Of course, departure from literal construction is justified when such construction would produce an absurd and unjust result and the literal construction in the particular action is clearly inconsistent with the purposes and policies of the act. *Save Hawaiiloa Ridge Association v. Land Use Commission,* 57 Haw. 84, 549 P.2d 737 (1976); *State v. Park,* 55 Haw. 610, 525 P.2d 586 (1974); *Natatorium Preservation Committee v. Edelstein,* 55 Haw. 55, 515 P.2d 621 (1973); *Pacific Ins. Co. v. Oregon Auto Ins. Co.,* 53 Haw. 208, 490 P.2d 899 (1971). In this particular litigation, however, the literal meaning of HRS § 84-14(1)(A) is consistent with the purposes and policies of the statute.

The spirit in which the state ethics code is to be read is reported in *Standing Committee Report No. 367* of the *House*

*Committee on Judiciary,* 1967 *House Journal, Regular Session,* 613, part of which states:

> "The public interest is best served by attracting and retaining in our State government and the legislature men and women of high caliber and attainment. A code of ethics, which is unnecessarily rigid and restrictive, will defeat its purpose. It would discourage qualified persons from entering government and may have a demoralizing effect upon incumbents." *Id.* at 613.

Although the following legislative expression, appearing in *Standing Committee Report No.* 670-72, *Senate Committee on Public Employment,* 1972 *Senate Journal, Regular Session,* 1034 at 1035, was made when the 1972 amendment to the state ethics code was passed, we think it equally informative regarding the scope of the earlier statute:

> "At the outset, certain observations, which your Committee considered, should be noted for an understanding of the spirit and intent which underlie the amendments. In drafting a conflict-of-interest statute it is easy to become overzealous and to forget the impact which a broad restriction may have. A statute clearly should prohibit conflicts of interests which are most damaging to the standards of good government and yet not prohibit so much that competent people will be discouraged from serving or that legislators and employees are deterred or restricted from freely carrying out their intended functions and duties. For example, . . . [a] statute which barred (or is construed to bar) a union member-legislator from serving on the labor committee . . . would be a disservice. . . . Thus, it would be unwise to proscribe all instances in which a conflict of interest might arise. It is not necessarily the conflict of competing interests which should be prohibited but any unethical actions arising out of them."

Finally, we approve the comments on a Conflict-of-Interests Act which appeared in 1 HARV. J. LEGIS. 68 (1974):

> "In drafting a conflict-of-interests statute it is easy to become overzealous and to forget the impact which a

broad restriction may have. A well-drawn statute should prohibit conflicts of interests which are most damaging to the standards of good government and yet not prohibit so much that competent people will be discouraged from serving. For example, a state would be hurt more than helped by a statute which in effect barred experts from serving on advisory boards. Therefore the scope of the Act has been limited in certain areas where broad prohibitions would do more harm than good." *Id.* at 69.

II.

The cross-appeal by appellee does not attack the decision and judgment of the court below. Indeed, he asserts that the decision and the judgment were correct and proper in all respects. He is, however, distressed because the court below declined to answer the constitutional, statutory, procedural questions, including challenges made to members of appellant. In view of our disposition of this action, we are not required and decline to consider the issues raised in appellee's cross-appeal.

Affirmed.

*Gary S. Okabayashi*, Special Counsel, for appellee-appellant, cross-appellee.

*James A. King (Bouslog & Symonds* of counsel) for appellant-appellee, cross-appellant.