STATE OF HAWAII, Plaintiff-Appellant, *v.* SAMSON TORRES, Defendant-Appellee

NO. 8568

(FC-CRIMINAL 34)

MARCH 8, 1983

LUM, ACTING C.J., NAKAMURA, PADGETT, HAYASHI, JJ.,
·AND CIRCUIT JUDGE MOON ASSIGNED
BY REASON OF VACANCY

OPINION OF THE COURT BY NAKAMURA, J.

The three-count indictment against Samson Torres (the

defendant) charged him in one count with having committed the crime of Incest[1] in violation of HRS § 707-741 and in the remaining counts with having committed the crime of Sexual Abuse in the First Degree in violation of HRS § 707-736(1)(a). The circuit court dismissed the Incest count on the ground that it did not charge an offense because it failed to allege the state of mind necessary to establish the offense. The State of Hawaii (the State) challenges the dismissal, asserting Incest is a general intent crime that does not call for the explicit allegation of a wrongful intent. Finding the dismissed count of the indictment was legally sufficient, we set aside the circuit court's order of dismissal and remand the case for further proceedings.

I.

"The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion," *Morissette v. United States,* 342 U.S. 246, 250 (1952); for the requirement of a culpable state of mind is deeply rooted[2] and remains "the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." *Dennis v. United States,* 341 U.S. 494, 500 (1951). The notion is iterated in the Hawaii Penal Code, as HRS § 702-204 provides:

State of mind required. Except as provided in section

---

[1] Count I of the indictment read:

On or about the 18th day of September, 1981, in the City and County of Honolulu, State of Hawaii, SAMSON TORRES did commit an act of sexual intercourse with Tammy J. Torres, the said Defendant's natural and legal daughter, who is within the degrees of consanguinity or affinity within which marriage is prohibited, thereby committing the offense of Incest in violation of Section 707-741 of the Hawaii Revised Statutes.

[2] *See e.g.,* 4 Blackstone's *Commentaries* 21 which states in part:

[I]n all temporal jurisdictions, an *overt* act, or some open evidence of an intended crime, is necessary in order to demonstrate the depravity of the will, before the man is liable to punishment. And as a vicious will without a vicious act is no civil crime, so, on the other hand, an unwarrantable act without a vicious will is no crime at all. So that, to constitute a crime against human laws, there must be, first, a vicious will; and, secondly, an unlawful act consequent upon such vicious will.

702-212, a person is not guilty of an offense unless he acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to each element of the offense. When the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly.[3]

That the offense at issue includes a mental element and the establishment of Incest demands a showing that the defendant acted intentionally are undisputable; for it is a felony defined by the Penal Code and no legislative purpose to impose absolute liability for the offense or any of its elements clearly appears. *See* note 3 *supra; see also State v. Rushing,* 62 Haw. 102, 105, 612 P.2d 103, 106 (1980).

The question posed for decision here, however, is whether the indictment charging a violation of HRS § 707-741[4] must also contain an allegation of a specific intent to commit the proscribed act. The State argues Incest is a general intent crime and the absence of an express averment that the act was intentionally or knowingly committed did not render Count I of the indictment deficient in any way. The defendant asserts the omission was fatal because a recent amendment of HRS § 707-700(7) transmuted the crime to one where a wrongful

---

[3] But there are offenses where the legislature has dispensed with the requirement of a culpable state of mind, as HRS § 702-212 provides:

When state of mind requirements are inapplicable to violations and to crimes defined by statutes other than this Code. The state of mind requirements prescribed by sections 702-204 and 702-207 through 702-211 do not apply to:

(1) An offense which constitutes a violation, unless the state of mind requirement involved is included in the definition of the violation or a legislative purpose to impose such a requirement plainly appears; or

(2) A crime defined by statute other than this Code, insofar as a legislative purpose to impose absolute liability for such offense or with respect to any element thereof plainly appears.

[4] HRS § 707-741 reads:

Incest. (1) A person commits the offense of incest if he commits an act of sexual intercourse with another who is within the degrees of consanguinity or affinity within which marriage is prohibited.

(2) Incest is a class C felony.

intent must be explicitly charged.[5] But we are not convinced the redefinition of "sexual intercourse" in 1980 had the claimed effect.

### II.

The State initially directs us to the Penal Code section outlining the crime in question and calls our attention to the fact that it does not prescribe exactly what must be proved with respect to the mental element of the offense. We are then reminded that "[w]hen the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly." HRS § 702-204. And the State maintains there was no defect in the particular charge, since the governing procedural statute, HRS § 806-28, expressly provides an indictment need not allege the crime was committed intentionally, knowingly, or recklessly, "except where such characterization is used in the statutory definition of the offense."[6] We cannot fault the State's reading of the statutes concerned.

---

[5] The gravamen of the crime is, of course, "sexual intercourse." The penal code provision defining the term, HRS § 707-700(7), formerly read:
> (7) "Sexual intercourse" means any act of coitus between male and female, but does not include deviate sexual intercourse; it occurs upon any penetration however slight and emission is not required.

See HRS § 707-700(7) (1976).
It now reads:
> (7) "Sexual intercourse" means sexual intercourse in its ordinary meaning or any intrusion or penetration, however slight, of any part of a person's body, or of any object, into the genital opening of another person, but emission is not required.

See S.L.H. 1980, c. 223.

[6] HRS § 806-28 provides:
> Characterization of the act. The indictment need not allege that the offense was committed or the act done "feloniously", "unlawfully", "wilfully", "knowingly", "maliciously", "with force and arms", or otherwise except where such characterization is used in the statutory definition of the offense. Where the characterization is so used the indictment may employ the words of the statute or other words substantially of the same import. In alleging the transaction the indictment may use the nounal, adjectival, verbal, or adverbial form of the statutory name of the offense.

The defendant, however, insists the indictment was infirm when viewed in the light of constitutional constraints, namely the requirement of due process and the prohibition against placing a person twice in jeopardy. In his opinion the broad meaning now attached to "sexual intercourse" renders it imperative that an indictment charging a violation of HRS § 707-741 allege the prohibited act was accompanied by a culpable state of mind. Otherwise, he claims, totally innocuous acts may well be punished thereunder.

A cursory examination of HRS § 707-741 and HRS § 707-700(7), as amended by S.L.H. 1980, c. 223, lends credence to his argument, as the gravamen of Incest is "sexual intercourse" and the term now comprehends "sexual intercourse in its ordinary meaning *or any intrusion or penetration, however slight, of any part of a person's body, or of any object, into the genital opening of another person.*" HRS § 707-700(7) (emphasis added). A literal application of the subsection would encompass, as defendant fears, some innocent acts. Among the possibilities broached by the defendant are the accidental "intrusions or penetrations" that may occur during an infant's bath, which he suggests could subject a parent to criminal prosecution under HRS § 707-741.

The absurd and unjust results of reading the new definition of "sexual intercourse" literally have not escaped us. Yet we are not bound to accept such consequences, for

[i]t is well settled and established in this jurisdiction that courts are required to construe and interpret a statute where it is ambiguous, or, absent such ambiguity, where the literal application of the statute causes an absurd or unjust result and such literal application is clearly inconsistent with the purposes and policies of the statute.

*State* v. *Park,* 55 Haw. 610, 614, 525 P.2d 586, 589-90 (1974); *see also Tangen v. State Ethics Commission,* 57 Haw. 87, 93, 550 P.2d 1275, 1279 (1976); *Save Hawaiiloa Ridge Association v. Land Use Commission,* 57 Haw. 84, 85, 549 P.2d 737, 738 (1976); *Pacific Insurance Co. v. Oregon Auto Insurance Co.,* 53 Haw. 208, 211, 490 P.2d 899, 901 (1971). Thus our task here is to determine whether a literal reading of the definition would be clearly inconsistent with the purpose and policy that induced the legislature to expand the meaning of "sexual inter-

course." And if we decide an inconsistency would ensue, we are obligated to weigh whether a reasonable construction consistent with such purpose and policy could be placed upon the statute. *State v. Park, supra.*

### III.

#### A.

The quest for purpose and policy leads us to the legislative history of the amendatory legislation, where we find the redefinition of "sexual intercourse" was prompted by a perceived need to "update the sexual offenses section of the Penal Code." Sen. Conf. Comm. Rep. No. 39-80, in 1980 Senate Journal, at 960; Hse. Conf. Comm. Rep. No. 52-80, in 1980 House Journal, at 1107. Specifically, the amendment's purpose was "to encompass more types of prohibitive action within the scope of sexual offenses" because the prior definition was "restrictive in its effect" and failed "to adequately cover within its scope certain acts which are *malum in se*." Hse. Stand. Comm. Rep. No. 841-80, in 1980 House Journal, at 1673-74.

We can only gather from the foregoing declarations of legislative sentiment that the intent was to incorporate within the Penal Code certain acts not covered previously by the provisions delineating sexual offenses. The particular acts the lawmakers had in mind were those that could be deemed *malum in se*.[7] A reading that would include all intrusions or penetrations of any part of another person's body, accidental

---

[7] Black's Law Dictionary defines *malum in se* as follows:

A wrong in itself; an act or case involving illegality from the very nature of the transaction, upon principles of natural, moral, and public law. Grindstaff v. State, 214 Tenn. 58, 377 S.W.2d 921, 926; State v. Shedoudy, 45 N.M. 516, 118 P.2d 280, 287. An act is said to be *malum in se* when it is inherently and essentially evil, that is, immoral in its nature and injurious in its consequences, without any regard to the fact of its being noticed or punished by the law of the state. Such are most or all of the offenses cognizable at common law (without the denouncement of a statute); as murder, larceny, etc.

Black's Law Dictionary 865 (5th ed. 1979).

or otherwise, within the scope of "sexual intercourse" would therefore be clearly inconsistent with the purpose and policy of the 1980 amendment.

### B.

Though seemingly unlimited in scope, the definition, in our opinion, can be reasonably construed to cover coitus in the ordinary sense and those intrusions or penetrations of another person's body that are considered "inherently and essentially evil." *See* note 7 *supra*. For "[w]here the letter of the law has produced a harsh result contrary to its intendment, we have not hesitated to eschew a strict interpretation and to seek meaning from its policy." *Montalvo v. Chang,* 64 Haw. 345, 356, 641 P.2d 1321, 1329 (1982). Our interpretation would, of course, exclude those accidental intrusions and penetrations that may happen during an infant's bath; it would also preclude criminal prosecutions where other innocent intrusions and penetrations may occur, as in the course of a medical examination. HRS § 707-741, therefore, is not subject to the reading suggested by defendant.

### IV.

Having concluded the offense in question outlaws coitus and certain immoral and injurious acts between persons who are within the degrees of consanguinity or affinity where marriage is prohibited, we proceed to the remaining issue, whether Count I of the indictment served to adequately inform defendant of the nature and cause of the accusation against him. The defendant's contention in this regard is that the stated count was deficient under the standards enunciated in *State v. Jendrusch,* 58 Haw. 279, 567 P.2d 1242 (1977).

In *Jendrusch* we reiterated the fundamental precept that an "accusation must sufficiently allege all of the essential elements of the offense," *id.* at 281, 567 P.2d at 1244, and said that "[w]here the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in

the language of the statute is sufficient." *Id.* at 283, 567 P.2d at 1245.

The charge of Incest here was drawn in the language of the statute; it gave the accused "reasonable notice of the facts" as required by HRS § 806-34,[8] since it contained the particulars of an offense. We think it informed the defendant of all essential elements of the crime intended to be punished and sufficiently apprised him of what he must be prepared to meet, despite the absence of a specific allegation of the mental state necessary to establish the offense. *See Territory v. Yoshimura,* 35 Haw. 324, 330 (1940). We further believe if other proceedings were to be brought against him for a similar offense, the charge provides more than enough information for him to plead an acquittal or conviction and avoid being placed in jeopardy again for the offense. *Id.*

Our conclusion that the crime was unmistakably defined despite the lack of an explicit averment of the mental state accompanying the prohibited act rests on the nature of the offense charged and the earlier conclusion that it is not a crime that can be accidentally or innocently committed. In some situations knowledge or intent "need not be alleged in terms, and a pleading is good if it fairly imports knowledge or intent." *United States v. Arteaga-Limones,* 529 F.2d 1183, 1199 (5th Cir. 1976); 1 C. Wright, *Federal Practice & Procedure* § 125, at 377-78 (1982). Incest as charged here is an offense where intent can be inferred because "sexual intercourse" under the circumstances alleged could only be a wilful act.

---

[8] HRS § 806-34 provides:

Sufficiency of averments as to offense and transaction. In an indictment the offense may be charged either by name or by reference to the statute defining or making it punishable; and the transaction may be stated with so much detail of time, place,and circumstances and such particulars as to the person (if any) against whom, and the thing (if any) in respect to which the offense was committed, as are necessary to identify the transaction, to bring it within the statutory definition of the offense charged, to show that the court has jurisdiction, and to give the accused reasonable notice of the facts.

Averments which so charge the offense and the transaction shall be held to be sufficient.

The order dismissing Count I is reversed, and the case is remanded for further proceedings.

*Nancy T. Sugimura* (*Josie T. Bayudan* on opening brief and *Arthur E. Ross* on reply brief), Deputies Prosecuting Attorney, for plaintiff-appellant.

*Edmund K. U. Yee* for defendant-appellee.