55 P.3d 276

STATE of Hawai'i, Plaintiff–Appellee,

v.

Darrell T. SPRATTLING,
Defendant–Appellant.

No. 22501.

Supreme Court of Hawai'i.

Sept. 17, 2002.

**314**

Clayton K.F. Zane, on the briefs, for defendant-appellant.

Donn Fudo, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

MOON, C.J., NAKAYAMA, and Circuit Judge TOWN, Assigned by Reason of Vacancy.

Opinion of the Court by NAKAYAMA, J.

Darrell T. Sprattling appeals from the April 14, 1999 judgment of the district court of the first circuit, the Honorable George Y. Kimura presiding, convicting him of assault in the third degree, in violation of Hawai'i Revised Statutes (HRS) § 707–712(1) (1993).[1] On appeal, Sprattling argues that: (1) the oral charge failed to allege "bodily injury," an essential element of the offense; (2) the trial court failed to obtain a valid waiver of his right to a jury trial; (3) the trial court plainly erred when it questioned witnesses during trial; and (4) there was insufficient evidence to support his conviction.

We hold that: (1) pursuant to the post-conviction liberal construction rule adopted by this court in *State v. Motta*, 66 Haw. 89, 657 P.2d 1019 (1983), Sprattling failed to show that the omission of the word "bodily" preceding the word "injury" prejudiced him or show that the oral charge could not be reasonably construed to charge a crime because of this omission; (2) the district court obtained a valid waiver of Sprattling's constitutional right to a jury trial; (3) the trial judge did not violate his duty to remain a neutral arbiter by questioning witnesses during the jury-waived trial; and (4) there was sufficient evidence to support the district court's finding that Sprattling possessed the requisite mens rea necessary for a conviction of assault in the third degree, and that he was not justified in pushing Calistro Cuson. Accordingly, we reject Sprattling's contentions and affirm his conviction.

## I. BACKGROUND

On January 13, 1999, Sprattling made a pretrial appearance in which his attorney waived an oral reading of the charge. Defense counsel also requested a bench trial, "I've spoken to my client . . . and he understands what a jury trial is. And he has informed me that he wishes to waive his

1. HRS § 707–712(1) provides:
 (1) A person commits the offense of assault in the third degree if the person:
 (a) Intentionally, knowingly, or recklessly causes bodily injury to another person; or
 (b) Negligently causes bodily injury to another person with a dangerous instrument.

right to a jury trial." The district court conducted the following colloquy:

THE COURT: Okay. Mr. Sprattling, you understand that you would have the right to a trial in circuit court with a jury where you would have an opportunity, through your attorney, to select 12 people from the community to sit as the jurors to make the decision on guilt or innocence in the case?

MR. SPRATTLING: Yes. I understand.

THE COURT: Okay. You understand that. But, by your attorney saying, though, that he's spoken to you that you're—that you would like to waive that right and remain in district court.

MR. SPRATTLING: Yes.

THE COURT: Is that correct? So, you— if you go ahead and waive that, then everything will be held here. You will not have a jury trial. It'll be a judge that will make the decision as to guilt or innocence if your matter goes to trial. You understand that?

MR. SPRATTLING: I understand that, sir.

THE COURT: And, that's what you wish to do? Remain in district court?

MR. SPRATTLING: Yes, sir.

THE COURT: All right. All right, Mr. Sprattling....

. . . . .

A two-day bench trial commenced on February 22, 1999 and concluded on March 16, 1999. At the outset of trial, defense counsel requested "that the prosecution arraign the defendant." The prosecutor orally charged Sprattling as follows:

On or about December 20th (twentieth), 1998, in the City and County of Honolulu, *you did intentionally, knowingly, or recklessly cause injury to another person,* to-wit, Calistro Cuson III, thereby committing the offense of Assault in the Third Degree in violation of Section 707–712(1) of the Hawai'i Revised Statutes.

(Emphasis added.) Sprattling pled not guilty, and the bench trial commenced.

At trial, Calistro Cuson, III, (Calistro) testified that on December 20, 1998, at around 2:30 p.m., he moved a shopping cart from a parking stall as his wife, Melinda Cuson (Ms. Cuson), waited to park their car. Just as he cleared the stall, a white truck drove from behind Ms. Cuson and parked in the stall. He approached the driver, and said, "What are you doing? We're gonna' park here." Sprattling stepped out of his vehicle, and walked toward Calistro. While Calistro did not remember if Sprattling's hands met his body, he fell and noticed that both of Sprattling's hands were outstretched with his palms open. The trial court found that "a confrontation of some sort," ensued, and subsequently, "[Calistro] was pushed and ... fell backwards over the curb and sustained injuries," which included embarrassment, chest pains, and breathing problems.

During and following the testimony of each witness, the trial judge posed a multitude of questions regarding the events that led up to and occurred during the confrontation. In addition to the information elicited from the attorneys, the court asked Calistro whether he was angry when he saw Sprattling drive into the stall that he was clearing for his wife. The court also queried Calistro as to the position he found himself after Sprattling "pushed" him.

Ms. Cuson testified that a confrontation occurred between Calistro and Sprattling. During the course of their heated discussion, Sprattling "rushed and ... pushed [her] husband." Ms. Cuson stepped out of her car, and noticed a "big guy," Sprattling's brother-in-law Elmer Wright, taunt Calistro. The trial court asked Ms. Cuson, among other things, whether she and Calistro were drinking or felt tired on the night of the incident, the direction in which Calistro fell after he was pushed, and Wright's and Calistro's size.

Sprattling presented a justification defense by offering testimony from his wife, Carla Sprattling, and himself in support of his claim of self-defense. Carla testified that she did not witness Sprattling push Calistro. During the course of and following Carla's testimony, the court questioned Carla as to the events that led to the confrontation. Augmenting the information elicited during direct examination, the court asked Carla whether there was "a fear that some confron-

tation might occur" when she saw Calistro confront Sprattling. The court also inquired whether she was afraid of ensuing events when Elmer exited the truck:

Q: Did Elmer get out of the car before you or did you get out before Elmer?

A: He got out before me.

Q: First?

A: Yes.

Q: So, when Elmer got out, you [sic] know that there was gonna' be some problems?

A: Yes.

Q: And, so, you got out?

A: Yes.

Sprattling testified that he pushed Calistro, but did so to defend himself. He claimed that Calistro was the aggressor, and "brushed his chest up against [him]." After exchanging words, Sprattling told Calistro "to get outta' my face and pushed him [away.]" The court also queried Sprattling as to the events that transpired on December 10, 1998. It determined that Sprattling was a soldier stationed in Hawai'i who went to basic training at Fort Jackson and fought in combat while stationed in Bosnia. The court also inquired whether Sprattling, Carla, and Elmer heard Calistro confront Sprattling.

The court found Sprattling guilty as charged. The instant appeal was timely filed.

## II. STANDARD OF REVIEW

### A. Oral Charge

"It is well settled that an accusation must sufficiently allege all of the essential elements of the offense charged[.]" *State v. Merino*, 81 Hawai'i 198, 212, 915 P.2d 672, 686 (1996) (citation and internal quotation marks omitted).

> Put differently, the sufficiency of the charging instrument is measured, *inter alia*, by whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he [or she] must be prepared to meet[.] A charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it

cannot be sustained, for that would constitute a denial of due process. Whether an indictment ... sets forth all the essential elements of [a charged] offense ... is a question of law, which we review under the *de novo*, or "right/wrong," standard.

*Id.* (citations and some internal quotation marks omitted.)

*State v. Kaakimaka*, 84 Hawai'i 280, 293–94, 933 P.2d 617, 630–31, *reconsideration denied*, 84 Hawai'i 496, 936 P.2d 191 (1997) (alterations in original).

### B. Constitutional Question

The validity of a criminal defendant's waiver of his or her right to a jury trial presents a question of state and federal constitutional law. Likewise, the validity of a statute based upon equal protection and due process of law is a question of constitutional law. "We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case. Thus, we review questions of constitutional law under the right/wrong standard." *State v. Hanapi*, 89 Hawai'i 177, 182, 970 P.2d 485, 490 (1998) (quoting *State v. Mallan*, 86 Hawai'i 440, 443, 950 P.2d 178, 181 (1998)) (citations omitted).

*State v. Friedman*, 93 Hawai'i 63, 67, 996 P.2d 268, 272 (2000).

### C. Harmless Error

[E]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to conviction. *State v. Heard*, 64 Haw. 193, 194, 638 P.2d 307, 308 (1981) (citations omitted). If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside. See

*Yates v. Evatt*, 500 U.S. 391, 402–03, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991)[.]

*State v. Jenkins*, 93 Hawai'i 87, 99–100, 997 P.2d 13, 25–26 (2000) (some citations omitted).

*State v. Lagat*, 97 Hawai'i 492, 40 P.3d 894, 898 (2002) (internal quotation marks omitted).

### D. Plain Error

"We may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Cullen*, 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997) (citations and internal quotation signals omitted). *See also* Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) (1993) ("Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

*Jenkins*, 93 Hawai'i at 101, 997 P.2d at 27 (2000) (citation omitted).

### E. Neutral Arbiter

■ "A trial judge's questioning of a witness is reviewed on appeal for abuse of discretion." *State v. Hutch*, 75 Haw. 307, 327, 861 P.2d 11, 21 (1993) (citing *State v. Schutter*, 60 Haw. 221, 222, 588 P.2d 428, 429 (1978), *reh'g denied*, 60 Haw. 677, 588 P.2d 428 (1979)).

### F. Sufficiency of the Evidence

■ [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether

there was substantial evidence to support the conclusion of the trier of fact.

*State v. Young*, 93 Hawai'i 224, 230, 999 P.2d 230, 236 (2000) (quoting *State v. Birdsall*, 88 Hawai'i 1, 8, 960 P.2d 729, 736 (1998) (quoting *State v. Quitog*, 85 Hawai'i 128, 145, 938 P.2d 559, 576 (1997))) (alteration in original). "[I]t is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the [trier of fact]." *State v. Sua*, 92 Hawai'i 61, 69, 987 P.2d 959, 967 (1999) (quoting *State v. Buch*, 83 Hawai'i 308, 321, 926 P.2d 599, 612 (1996) (citation omitted)) (alteration in original).

## III. DISCUSSION

### A. The oral reading of the charge was sufficient.

■ Sprattling contends that the oral charge was fatally defective because it failed to allege "bodily injury" and, instead, simply alleged injury. He contends that the word "injury" is insufficient to state an essential element of the offense because the definition of "bodily injury" specifies a particular type of injury, whereas "injury" has a broader definition. Sprattling argues this deficiency warrants a reversal of his conviction because the omission of the qualifying word "bodily" "cannot be reasonably construed to charge the offense for which [he] was convicted." We disagree. Inasmuch as Sprattling fails to provide a clear showing of substantial prejudice or that the charge could not be reasonably interpreted to assert a criminal offense, this court holds that the charge was sufficient.

■ The criminal process begins when the accused is charged with a criminal offense, if it is not a felony, by complaint or oral charge. Hawai'i Rules of Penal Procedure (HRPP) Rule 5(b)(1).[2] The purpose of

2. HRPP Rule 5(b)(1) provides:

(b) Offenses other than felony.
(1) Arraignment. In the district court, if the offense charged against the defendant is other than a felony, the complaint shall be filed or the oral charge stated, a copy of such charge and any affidavits in support thereof and a copy of the appropriate order, if any, shall be furnished to the defendant, and proceedings shall be had in accordance with this section

(b). Arraignment shall be in open court and shall consist of the reading of the complaint or the statement of the oral charge to the defendant, or stating the substance of the charge and calling on the defendant to plead thereto. The defendant may waive the reading of the complaint or the statement of the oral charge at arraignment provided that an oral charge shall be stated at the commencement of trial or prior to entry of a guilty or no contest plea. In

this process is to " 'sufficiently apprise[ ] the defendant of what he [or she] must be prepared to meet[.]' " *Merino,* 81 Hawai'i at 212, 915 P.2d at 686 (quoting *State v. Wells,* 78 Hawai'i 373, 379–80, 894 P.2d 70, 76–77 (1995)) (some alterations in original). As such, an oral charge or complaint must "sufficiently allege all of the essential elements of the offense[,]" regardless of "whether an accusation is in the nature of an oral charge, information, indictment, or complaint[.]" *See State v. Jendrusch,* 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977); *see also* HRPP Rule 7(d) (requiring that the charge state the "plain, concise and definite ... essential facts constituting the offense charged.").

■ Because "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation[,]" and "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury," an indictment or oral charge that fails in a material respect would encroach upon a defendant's constitutional rights. U.S. Const. amends. V and VI; Haw. Const. art. I, § 14. The onus is on the prosecution to inform the accused fully of the accusations presented against him or her because "[t]he principle of fundamental fairness, essential to the concept of due process of law, dictates that the defendant in a criminal action should not be relegated to a position from which he [or she] must speculate as to what crime he [or she] will have to meet in defense." *See State v. Israel,* 78 Hawai'i 66, 71, 890 P.2d 303, 308 (quoting *Kreck v. Spalding,* 721 F.2d 1229, 1233 (9th Cir.1983)), *reconsideration denied,* 78 Hawai'i 474, 896 P.2d 930 (1995). In other words, the oral charge must be worded in a manner such "that the nature and cause of the accusation [could] be understood by a person of common understanding[.]" *Id.* at 70, 890 P.2d at 307.

■ Due to the significant consequences associated with omitting an essential and material element in an oral charge, an objection to this deficiency may be raised "at any time

during the pendency of the proceeding[.]" *Motta,* 66 Haw. at 90, 657 P.2d at 1020. However, in *Motta* this court adopted a rule (hereinafter the "Motta/*Wells* post-conviction liberal construction standard"), which essentially prescribes a presumption of validity on indictments that are challenged subsequent to a conviction. *Id.* at 91, 657 P.2d at 1020. "Elaborating on this standard, this court [will] 'not reverse a conviction based upon a defective indictment [or complaint] unless the defendant can show prejudice or that the indictment [or complaint] cannot within reason be construed to charge a crime.' " *Merino,* 81 Hawai'i at 212, 915 P.2d at 686 (quoting *Wells,* 78 Hawai'i at 381, 894 P.2d at 78 (quoting *Motta,* 66 Haw. at 90, 657 P.2d at 1019–20)) (alterations in original). In other words, the well-established rule in this state is that convictions based upon a defective charge will be deemed valid unless the defendant proves that either the complaint cannot be reasonably interpreted to charge a crime or he or she was prejudiced by the omission. This analysis extends to oral charges. *State v. Elliott,* 77 Hawai'i 309, 311, 884 P.2d 372, 374 (1994) (holding that because Elliott did not raise the issue whether his oral charge was sufficient in the lower court, review of the " '[charges] which are tardily challenged [after conviction] are liberally construed in favor of validity.' ") (quoting *Motta,* 66 Haw. at 91, 657 P.2d at 1020 (quoting *United States v. Pheaster,* 544 F.2d 353, 361 (9th Cir.1976), *cert. denied,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977))).

■ In determining whether an offense has been sufficiently pleaded, this court has departed from strict technical rules construing the validity of an oral charge. *Motta,* 66 Haw. at 91, 657 P.2d at 1020 ("[T]he courts of the United States long ago withdrew their hospitality toward technical claims of invalidity of an indictment first raised after trial, absent a clear showing of substantial prejudice to the accused[.]") (quoting *United States v. Thompson,* 356 F.2d 216, 226 (2d Cir.), *cert. denied* 384 U.S. 964, 86 S.Ct. 1591, 16 L.Ed.2d 675 (1965)). Rather,

addition to the requirements of Rule 10.1, the court shall in appropriate cases inform the defendant of the right to jury trial in the circuit

court or that the defendant may elect to be tried without a jury in the district court.

we now interpret a charge as a whole, employing practical considerations and common sense. *State v. Daly,* 4 Haw.App. 52, 55, 659 P.2d 83, 85–86 (1983) (holding that common sense must be employed when interpreting an indictment and that an "essential element need not be expressed with the magic words[.]"); *See also United States v. Mouton,* 657 F.2d 736, 739 (5th Cir.1981) (noting that the indictment is to be construed by practical and not technical considerations); *Christian v. Alaska,* 513 P.2d 664, 667 (Alaska 1973); *State v. Minnick,* 168 A.2d 93, 96 (Del.1960) (noting that common sense must be employed when construing the words of an indictment); *State v. Kjorsvik,* 117 Wash.2d 93, 812 P.2d 86, 94 (1991) (same). Moreover, in construing the validity of an oral charge, we are not restricted to an examination solely of the charge, *Israel,* 78 Hawai'i at 70, 890 P.2d at 307, but will interpret it in light of all of the information provided to the accused. *Elliott,* 77 Hawai'i at 312, 884 P.2d at 375 ("One way in which an otherwise deficient count can be reasonably construed to charge a crime is by examination of the charge as a whole."); *State v. Treat,* 67 Haw. 119, 120, 680 P.2d 250, 251 (1984) ("We think that in determining whether the accused's right to be informed of the nature and cause of the accusation against him has been violated, we must look to all of the information supplied to him by the State to the point where the court passes upon the contention that his right has been violated.") (quoting *State v. Robins,* 66 Haw. 312, 317, 660 P.2d 39, 42–43 (1983)).

Sprattling's assertion that the oral charge was invalid because it failed to include an essential element of his offense is not persuasive. While the charge failed to include the modifying word "bodily," the omission did not alter the nature and cause of the accusation such that a person of common understanding would fail to comprehend it. HRS § 707–712 requires that a person intentionally, knowingly, or recklessly cause "bodily injury." The word "bodily" alone is not an essential element of the offense; it modifies "injury." The word "assault" by definition implies bodily injury; it is defined as "any intentional display of force such as would give the victim reason to fear or expect *bodily harm* [ ] constitutes an assault." *Black's Law Dictionary* 114–15 (6th ed.1990) (emphasis added). While "injury" is not synonymous with "bodily injury," assault necessitates "bodily injury" by its very definition.[3] Therefore, when the oral charge is viewed as a whole, the oral charge clearly indicates that the reference to "assault" anchors "injury" within the context of criminal assault, which necessarily involves bodily injury. *See* HRS §§ 707–710 to –712 (1993).[4] Contrary to Sprattling's contentions, the prosecution's omission of the word "bodily" in reciting his oral charge was not "so obviously defective that by no reasonable construction can it be

---

3. Thus, the Hawai'i Penal Code does not include an offense of "property assault" but criminal property damage. *See* HRS §§ 708–820 to –823.

4. HRS § 707–710 provides:
(1) A person commits the offense of assault in the first degree if the person intentionally or knowingly causes serious bodily injury to another person.
(2) Assault in the first degree is a class B felony.
HRS § 707–711 provides:
(1) A person commits the offense of assault in the second degree if:
(a) The person intentionally or knowingly causes substantial bodily injury to another;
(b) The person recklessly causes serious bodily injury to another person;
(c) The person intentionally or knowingly causes bodily injury to a correctional worker, as defined in section 710–1031(2), who is engaged in the performance of duty or who is within a correctional facility;

(d) The person intentionally or knowingly causes bodily injury to another person with a dangerous instrument; or
(e) The person intentionally or knowingly causes bodily injury to an educational worker who is engaged in the performance of duty or who is within an educational facility. For the purposes of this section, "educational worker" means any administrator, specialist, counselor, teacher, or employee of the department of education, or a person who is a volunteer in a school program, activity, or function that is established, sanctioned, or approved by the department of education or a person hired by the department of education on a contractual basis and engaged in carrying out an educational function.
(2) Assault in the second degree is a class C felony.
For HRS § 707–712, *see supra* note 1.

said to charge the offense for which conviction was had," to wit, assault in the third degree. *Motta*, 66 Haw. at 94, 657 P.2d at 1022. Essentially, Sprattling asks this court to declare invalid his arraignment by invoking the strict technical rules rejected in *Motta*. Sprattling fails to demonstrate that the omission of the modifying word "bodily" made the oral charge fatally defective such that it failed to charge an offense.

Unlike the present case, convictions have been reversed for omitting an entire element of an offense, *see, e.g., State v. Yonaha*, 68 Haw. 586, 723 P.2d 185 (1986) (reversing conviction because omitted element of intent in reciting the charge); *State v. Faulkner*, 61 Haw. 177, 599 P.2d 285 (1979) (same), failed to specify the alleged victim, *see Elliott*, 77 Hawai'i 309, 884 P.2d 372, or left out language that was essential for identifying the particular offense charged, *see, e.g., Israel*, 78 Hawai'i 66, 890 P.2d 303 (affirming dismissal of charge because it did not specify elements of the underlying felony, where offense required the actual commission of the underlying felony); *Wells*, 78 Hawai'i 373, 894 P.2d 70 ("triggering language" designating grade of offense according to level of misconduct). While the prosecution, in this case, omitted the qualifying term "bodily," the deletion did not alter the charge such that it could not be reasonably construed to charge assault in the third degree.

▇▇▇▇▇ Further, Sprattling was not alleged that he was prejudiced by the omission of the word "bodily" in the oral charge. This court recognizes that where an error or defect does not affect the substantial rights of the defendant, it will be disregarded. HRPP Rule 52(a).[5] Such error, however, should "not [ ] be viewed in isolation and considered purely in the abstract. It must be examined in light of the entire proceedings and given the effect to which the whole record shows it is entitled." *State v. Gano*, 92 Hawai'i 161, 176, 988 P.2d 1153, 1163 (1999) (quoting *Heard*, 64 Haw. at 194, 638 P.2d at 308 (citations omitted)). When constitutional errors "deprive defendants of basic protections without which a criminal trial cannot reliably

serve its function as a vehicle for a determination of guilt or innocence ... and no criminal punishment may be regarded as fundamentally fair," the harmless error doctrine may not be employed. *See Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); *see also United States v. Du Bo*, 186 F.3d 1177, 1180 & n. 2 (9th Cir.1999) (affirming the premise that the harmless error review could be applied to cases in which "challenges to minor or technical deficiencies" were raised even though the holding in *Neder, supra* was not applied to cases in which an essential element of an indictment was lacking). Therefore, when constitutional rights are implicated, this doctrine may be invoked so long as the error "is so unimportant and insignificant that it may be deemed harmless." *State v. Ford*, 84 Hawai'i 65, 74, 929 P.2d 78, 87 (1996) (quoting *State v. Ganal*, 81 Hawai'i 358, 376, 917 P.2d 370, 388 (1996)) (citing HRPP Rule 52) (internal quotation marks omitted). The issue, in making this determination is, therefore, whether there is a reasonable possibility that the error might have contributed to conviction. *Gano*, 92 Hawai'i at 176, 988 P.2d at 1163 (citations omitted). The harmless error doctrine also applies to defects in indictments. *Du Bo*, 186 F.3d at 1180 ("[C]hallenges to minor or technical deficiencies, even where the errors are related to an element of the offense charged and even where the challenges are timely, are amenable to harmless error review.").

▇▇▇▇ Because the omission of the word "bodily" did not constitute an essential element of the offense, the harmless error doctrine is applicable. The record here shows Sprattling had actual knowledge of the charges against him. Before trial commenced, Sprattling indicated to the district court, in two separate proceedings and through competent counsel, that he understood the charge. More importantly, he also freely admitted to pushing Calistro; he did not deny having physical contact with Calistro but asserted self-defense as his justification. During closing arguments, Sprattling clearly articulated his understanding of the

---

5. HRPP Rule 52(a) provides: "(a) Harmless error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

offense for which he was charged. He restated the elements of assault in the third degree when he informed the court: "Your Honor, ... the State has to prove beyond a reasonable doubt that [Sprattling] intentionally, knowingly, or recklessly cause[d] *bodily injury.*" (Emphasis added.) Inasmuch as Sprattling fails to prove he was substantially prejudiced by the oral charge, he fails to overcome the presumption of validity prescribed by the *Motta/Wells* post-conviction liberal construction standard. Accordingly, we hold the oral charge was sufficient to put Sprattling on notice of the charges against him.

**B. The colloquy was sufficient.**

 In Sprattling's second point of error, he alleges that he was not fully informed of his right to a jury trial. Consequently, he contends that his waiver was not valid inasmuch as he did not knowingly, intelligently, and voluntarily surrender his constitutional right. Because Sprattling failed to prove by a preponderance of the evidence that his waiver was involuntary, we hold that the district court did not err in this regard.

A defendant is entitled to a trial by jury. *See* U.S. Const. amend. VI.; Haw. Const. art. I, § 14. This right attaches when the potential penalty for the charged crime is imprisonment for six months or more. *See* HRS § 806-60 (1993) ("Any defendant charged with a serious crime shall have the right to trial by a jury of twelve members. 'Serious crime' means any crime for which the defendant may be imprisoned for six months or more.").

 A defendant is also entitled to waive this right, but must voluntarily do so "orally or in writing[.]" *Friedman,* 93 Hawai'i at 68, 996 P.2d at 273 (citing *State v. Ibuos,* 75 Haw. 118, 121, 857 P.2d 576, 578 (1993) (citing HRPP Rule 5(b)(3) ("In appropriate cases, the defendant shall be tried by jury in the circuit court unless the defendant waives in writing or orally in open court his

right to trial by jury."))). If the accused opts for a bench trial, the court must inform the defendant of this constitutional right. *Id.* at 69, 996 P.2d at 274. HRPP Rule 5(b)(1) provides that "the court shall in appropriate cases inform the defendant of the right to jury trial in the circuit court or that the defendant may elect to be tried without a jury in the district court." Therefore, if the record shows that the trial court conducted a colloquy with the defendant, which would presume the waiver was voluntary, the defendant has the burden of proving, by a preponderance of the evidence, that the waiver was not voluntary. *Id.* at 69, 996 P.2d at 274. Failure to obtain a valid waiver constitutes reversible error. *Id.* at 68, 996 P.2d at 273.

In *Friedman,* this court held that an analysis into whether a jury trial waiver was valid must be made in light of the totality of the circumstances. *Id.* at 69-70, 996 P.2d at 274-75. Friedman argued that his constitutional right to a jury trial was effectively violated by the circuit court because it failed to inform him that "a jury is comprised of twelve members, that he could take part in jury selection, or that a jury verdict must be unanimous." *Id.* at 69, 996 P.2d at 274. This court rejected Friedman's suggestion to adhere to a "rigid pattern of factual determinations." *Id.* ("Friedman appears to urge this court to adopt a 'bright line rule[.]'"). Rather, because a waiver "is the knowing, intelligent, and voluntary relinquishment of a known right," this court looks to the totality of the circumstances to determine whether the defendant's waiver was validly surrendered. *Id.* at 68, 996 P.2d at 273.

In the case at hand, Sprattling was entitled to a trial by a jury because he was charged with assault in the third degree, an offense that carries a maximum one-year term of imprisonment. *See* HRS § 707-712(1)(b) (1993), *see supra* note 1; HRS § 706-663 (1993).[6] Moreover, inasmuch as the record indicates that the district court conducted a

6. HRS § 706-663 provides:
 After consideration of the factors set forth in sections 706-606 and 706-621, the court may sentence a person who has been convicted of a misdemeanor or a petty misdemeanor to im-

prisonment for a definite term to be fixed by the court and not to exceed one year in the case of a misdemeanor or thirty days in the case of a petty misdemeanor.

colloquy with Sprattling regarding his right to a trial by jury and that he orally waived this right, Sprattling bears the burden of proving that the wavier was not voluntary by a preponderance of the evidence. However, Sprattling's proof that the trial court failed to determine whether he understood the consequences of his decision was that the trial court did not inform him that: (1) he had a right to a "fair" and "impartial" jury of his "peers"; (2) he could challenge jurors for cause; (3) he had a right to exercise three peremptory challenges; (4) he had a right to select and question twelve jurors; and (5) he was entitled to have all twelve jurors unanimously find him guilty beyond a reasonable doubt. Sprattling adds that at the time he waived his right to a jury trial, the district court failed to determine whether: (1) he was under the influence of drugs or alcohol; (2) his educational and life experience background was sufficient for a finding that he understood his rights; and (3) he freely and independently decided to waive his rights. In light of these oversights, Sprattling asserts, it is evident that the district court failed to obtain a knowing, voluntary, and intelligent waiver of his right to a jury trial. However, like *Friedman*, the record in the present case indicates that, under the totality of the circumstances, Sprattling understood his right and validly waived it. At his pretrial appearance, Sprattling was assisted by capable counsel, who informed the court that Sprattling understood the concept of a jury trial and wished to waive his right to such a trial. The district court confirmed this information by explaining to Sprattling that he would have an opportunity, through his attorney, to select twelve members in the community as jurors who would determine his guilt or innocence. The court added that if Sprattling chose to waive this right, trial would be held at district court where a judge would determine his guilt or innocence. Sprattling indicated that he understood the consequences of his choice. Nonetheless, Sprattling orally expressed his desire to waive his constitutional right. Therefore, under the totality of the circumstances, Sprattling knowingly, voluntarily, and intelligently waived his right. Accordingly, this court

holds that Sprattling validly waived his right to a trial by jury.

## C. The trial court did not abuse its discretion by asking witnesses questions.

The trial judge, Sprattling contends, failed to act as a neutral arbiter by subjecting each witness to "unduly extended examination." He objects to the quantity of questions asked of each witness and asserts that, because of the sheer number of interrogatories and new information elicited, the court's inquiry was unduly extensive and effectively supported the prosecution's case against him. Inasmuch as the trial judge's questions did not usurp the function of either counsel or pose inquiries into nonmaterial and impertinent information, the trial court did not abuse its discretion.

Sprattling failed to object or otherwise raise this issue prior to the present appeal. However, because a trial conducted by an impartial arbiter implicates a defendant's constitutional right to due process, *see* State v. Silva, 78 Hawai'i 115, 121, 890 P.2d 702, 708 (App.1995), *overruled on other grounds*, Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1993), this court may recognize this point on appeal as one raised under a plain error analysis.

We recognize that a trial judge may question witnesses to adduce material and relevant testimony not elicited by either party and for clarification purposes. State v. Hutch, 75 Haw. at 328, 861 P.2d at 21 ("this power to interrogate must be judiciously exercised, and the examination ought not to be extended beyond that which is reasonably necessary to elicit needed material facts or to clarify testimony."); Hawai'i Rules of Evidence (HRE) Rule 614(b). However, when conducting such questioning, the trial court must not exhibit bias or advocate for either party. Silva, 78 Hawai'i at 118, 890 P.2d at 705. As noted by this court in Hutch:

> [T]he judge is accorded considerably greater discretion in the questioning of witnesses in jury waived trials and during the hearing of evidentiary motions. In such cases, it is the judge who is the trier of fact, and, accordingly, there is no possi-

bility of jury bias; under the circumstances, the judge's duty to clarify testimony and fully develop the truth in the case becomes particularly heightened.

*Hutch,* at 326 n. 8, 861 P.2d at 21 n. 8. In this regard, a judge may not "conduct an unduly extended examination of any witness." *Id.* at 326, 861 P.2d at 21 (quoting *Schutter,* 60 Haw. at 222–23, 588 P.2d at 429). A trial judge "takes on the role of the prosecutor when he or she conducts a 'rigorous, persistent and extensive interrogation' of a witness, eliciting testimony which 'tends to discredit the theory of the defense . . . with questions normally identified with a prosecutor[.]' " *Silva,* 78 Hawai'i at 118, 890 P.2d at 705.

In the present case, the trial judge asked progressively fewer questions of each witness in the order in which they appeared. An examination of the questions reveals that a majority of the inquiries to which Sprattling now objects clarified testimony already adduced by the interrogating attorneys or brought forth new information germane to the issues raised in the case. The court's questions did not take on a prosecutorial aspect and he questioned both prosecution and defense witnesses. While the court's questions spanned the course of the incident, the questions favored neither the prosecution nor Sprattling. Contrary to Sprattling's contentions, there is no evidence that the trial judge assisted the prosecution by asking questions that established the elements necessary to convict Sprattling. For example, the trial judge elicited new facts from Ms. Cuson that established the make, color, and size of their car, that she and Calistro had not consumed alcohol that night but were tired from working all week, that Calistro was no longer in the parking stall when Sprattling parked his car and the physical size of Elmer and Calistro. In addition to the testimony elicited from Calistro by counsel, the judge also questioned Calistro regarding whether he was tired, knew the mall would be crowded and parking was scarce, was frustrated and angry when Sprattling parked in the stall, and the position of his body after he fell. As the prosecution correctly noted, the evidence necessary to establish the requisite elements had already been brought forth by the attorneys. As such, the

trial court neither usurped the role of the prosecutor nor favored either party. Therefore, the trial court did not abuse its discretion when it questioned each witness in this case.

**D. The evidence elicited was sufficient to sustain Sprattling's conviction.**

 Sprattling argues that the trial court erroneously found him guilty because the evidence adduced at trial was insufficient to prove, beyond a reasonable doubt, that he had the requisite mens rea for committing assault in the third degree, and that the evidence presented by the prosecution was insufficient to prove that Sprattling was not justified in pushing Calistro. We disagree. The evidence supports the verdict that Sprattling knowingly pushed Calistro without a reasonable belief that Calistro would use unlawful force.

Sprattling cursorily contends the evidence failed to support a finding that he had the requisite mens rea because there was neither direct nor circumstantial evidence to prove that he intentionally, knowingly, or recklessly pushed Calistro. In proving the state of mind of a particular defendant, this court has held that:

> "[P]roof by circumstantial evidence and reasonable inferences arising from circumstances surrounding the [defendant's conduct] is sufficient. . . . Thus, the mind of an alleged offender may be read from his acts, conduct and inferences fairly drawn from all the circumstances." *State v. Sadino,* 64 Haw. 427, 430, 642 P.2d 534,. 536–37 (1982) (citations omitted); *see also State v. Simpson,* 64 Haw. 363, 373 n. 7, 641 P.2d 320, 326 n. 7 (1982).
>
> *State v. Mitsuda,* 86 Hawai'i 37, 44, 947 P.2d 349, 356, *reconsideration denied* (1997) (quoting *State v. Batson,* 73 Haw. 236, 254, 831 P.2d 924, 934 (1992)) (emphasis added).

*Jenkins,* 93 Hawai'i at 106, 997 P.2d at 32.

In the present case, Sprattling was convicted of assault in the third degree, which required that the prosecution prove, beyond a reasonable doubt, that Sprattling "[i]nten-

tionally, knowingly, or recklessly caused bodily injury to another person." HRS § 707–712(a) (1993), see supra note 1. The evidence, when viewed in a light most favorable to the prosecution, supports Sprattling's conviction. The evidence adduced confirmed that while Calistro cleared a parking stall of a shopping cart for his wife at Pearlridge Shopping Center, Sprattling drove around her car and parked his vehicle in the stall. An intense exchange ensued. Carla testified that she was afraid a confrontation would occur, and when Elmer Wright, Carla's brother, exited the car she knew "there [was] going to be some problems." Ms. Cuson testified that Sprattling rushed Calistro and pushed him to the ground. Sprattling testified that he pushed Calistro out of self-defense. However, the trial court did not find Sprattling's claim to be credible, and ruled that his version of the event "[did]n't make any sense."

From the foregoing, the evidence adduced at trial was sufficient to lead a reasonable trier of fact to conclude that Sprattling acted either knowingly or recklessly when he pushed Calistro, and that he was not justified in doing so. Therefore, the evidence adduced, when viewed in a light most favorable to the prosecution as this court is compelled to do, was sufficient to support Sprattling's conviction.

## IV. CONCLUSION

Based on the foregoing, this court holds that Sprattling's conviction is affirmed.

Dissenting Opinion by LEVINSON, J., With Whom RAMIL, J., Joins.

The defendant-appellant Darrell T. Sprattling appeals from the judgment, conviction, and sentence of the district court of the first circuit with respect to one count of assault in the third degree, pursuant to Hawai'i Revised Statutes (HRS) § 707–712(1) (1993).[1] On appeal, Sprattling raises four points of

error: (1) that the oral charge failed to state an essential element of the offense; (2) that the colloquy regarding waiver of jury trial was insufficient; (3) that the district court's questioning of witnesses during Sprattling's bench trial was excessive; and (4) that the evidence was insufficient to sustain his conviction. Inasmuch as Sprattling's first point of error is both meritorious and outcome-dispositive of the present appeal under State v. Elliott, 77 Hawai'i 309, 884 P.2d 372 (1994), and State v. Jendrusch, 58 Haw. 279, 567 P.2d 1242 (1977), I would reverse the district court's judgment of conviction and sentence and therefore respectfully dissent from the opinion of the court.

## I. BACKGROUND

### A. Factual Synopsis

Due to the nature of my resolution of this matter, the facts can be briefly stated. Sprattling was convicted after a two-day bench trial, which commenced on February 2, 1999, and concluded on March 16, 1999. At trial, the complainant, Calistro Cuson III ("Calistro"), testified that, while removing a shopping cart from a parking stall at Pearlridge Mall so that his wife, Melinda Cuson ("Melinda"), could park their vehicle, Sprattling drove into and parked in the stall. As Sprattling was getting out his truck, Calistro asked Sprattling, "What are you doing? We're going to park." The district court found that Calistro and Sprattling then became embroiled in "a confrontation of some sort," during which "[Calistro] was pushed and ... fell backwards over the curb and sustained certain injuries." The injuries included "embarrassment," chest pains, and breathing problems. On the day following the confrontation, Calistro sought medical attention. Although Calistro testified that he did not actually observe Sprattling's hands make contact with his body, he did testify

1. HRS § 707–712 provides:
 **Assault in the Third Degree.** (1) A person commits the offense of assault in the third degree if the person:
 (a) Intentionally, knowingly, or recklessly causes *bodily injury* to another person; or
 (b) Negligently causes *bodily injury* to another person with a dangerous instrument.

 (2) Assault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor.
 (Emphases added.)

that, just after falling, he looked up to see Sprattling standing over him, arms outstretched, with palms faced outward.

Melinda also testified. She confirmed that a confrontation between Sprattling and Calistro had occurred in the parking lot at Pearlridge Mall. She testified that she actually observed Sprattling push Calistro.

Sprattling presented a justification defense, in support of which he adduced the testimony both of himself and of his spouse, Carla Sprattling. Sprattling claimed that he pushed Calistro in self-defense. The district court found that Sprattling's version of the confrontation made no sense and, therefore, found that his testimony was not credible.

The district court found Sprattling guilty of assault in the third degree. On April 14, 1999, the district court entered judgment and sentenced Sprattling to one year of probation. On April 30, 1999, Sprattling filed a timely notice of appeal.

### B. The Oral Charge

At a pretrial appearance occurring on January 13, 1999, Sprattling's counsel waived the reading of the charge. However, at the outset of Sprattling's bench trial on February 22, 1999, Sprattling's counsel "ask[ed] that the Prosecution arraign the defendant." The Deputy Prosecuting Attorney (DPA) orally charged Sprattling as follows:

> On or about December 20th (twentieth), 1998, in the City and County of Honolulu, you did intentionally, knowingly, or recklessly cause *injury* to another person, to wit, Calistro Cuson III, thereby committing the offense of Assault in the Third Degree in violation of Section 707–712(1) of the Hawai'i Revised Statutes.[2]

(Emphasis added.) Sprattling then pled not guilty, and the district court commenced Sprattling's bench trial.

### II. STANDARD OF REVIEW

It is well settled that an "accusation must sufficiently allege all of the essential elements of the offense charged," a require-

ment that "obtains whether an accusation is in the nature of an oral charge, ... indictment, or complaint[.]" ... *Jendrusch*, 58 Haw. [at] 281, 567 P.2d [at] 1244.... Put differently, the sufficiency of the charging instrument is measured, *inter alia*, by "whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he [or she] must be prepared to meet[.]" *State v. Wells*, 78 Hawai'i 373, 379–80, 894 P.2d 70, 76–77 (1995) (citations and internal quotation marks omitted) (brackets in original). "A charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it cannot be sustained, for that would constitute a denial of due process." *Jendrusch*, 58 Haw. at 281, 567 P.2d at 1244 (citations omitted). "Whether an indictment [or complaint or oral charge] sets forth all the essential elements of [a charged] offense ... is a question of law," which we review under the *de novo*, or "right/wrong," standard. *Wells*, 78 Hawai'i at 379, 894 P.2d at 76 (citations omitted).

*State v. Merino*, 81 Hawai'i 198, 212, 915 P.2d 672, 686 (1996) (some brackets added and some in original). Inasmuch as Sprattling challenges the sufficiency of the oral charge for the first time on appeal, our construction of the oral charge in this matter is subject to the "*Motta/Wells* post-conviction liberal construction rule." *Id.; see also Elliott*, 77 Hawai'i at 311, 884 P.2d at 374 (1994) (applying the *Motta/Wells* post-conviction liberal construction rule to an oral charge challenged for the first time on appeal). Accordingly, this court "[will] not 'reverse a conviction based upon a defective indictment [or complaint or oral charge] unless the defendant can show [either] prejudice *or* that the indictment [or complaint or oral charge] cannot within reason be construed to charge a crime.' " *Merino*, 81 Hawai'i at 212, 915 P.2d at 686 (quoting *Wells*, 78 Hawai'i at 381, 894 P.2d at 78 (quoting *State v. Motta*, 66 Haw. 89, 91, 657 P.2d 1019, 1020 (1983))) (some brackets add-

---

**2.** My independent review of the audio tape recording of the proceeding at which the oral charge was recited establishes that the court reporter's transcription of the oral charge, as set forth above, is accurate.

ed and some in original) (emphasis added); *see also Elliott*, 77 Hawai'i at 311, 884 P.2d at 374.

## III. *DISCUSSION*

Sprattling contends that the oral charge in the present matter, *see supra* part I.B., failed to allege "bodily injury," an essential element of the offense of which he stands convicted. He argues that, inasmuch as the unmodified word "injury" is not coextensive with "bodily injury" and cannot, within reason, and in light of the oral charge in its entirety, be construed to mean "bodily injury," it follows, *a fortiori*, that the oral charge "cannot be reasonably construed to charge the offense for which [he] was convicted." Accordingly, Sprattling submits that his conviction must be reversed. I agree. However, before addressing Sprattling's meritorious claim, I review a few of the general principles that would control my resolution of this matter.

A. *General Principles Regarding An Oral Charge, Complaint, or Indictment Challenged For The First Time On Appeal*

The failure of an accusation to charge an offense may be raised "at any time during the pendency of the proceedings[.]" HRPP 12(b)(2) (1995); *see also* [ ] *Motta*, 66 Haw. [at] 90, 657 P.2d [at] 1019–20.... However this court has

> adopted the rule [hereinafter, the "*Motta[/]Wells* post-conviction liberal construction rule"] followed in most federal courts of liberally construing indictments [and complaints and oral charges] challenged for the first time on appeal. *Motta*, 66 Haw. at [90]–91, 657 P.2d at 1020. Elaborating on this standard, this court [will] "not reverse a conviction based upon a defective indictment [or complaint or oral charge] unless the defendant can show prejudice or that the indictment [or complaint or oral charge] cannot within reason be construed to charge a crime." *Id.*

*Wells*, 78 Hawai'i at 381, 894 P.2d at 78.

*Merino*, 81 Hawai'i at 212, 915 P.2d at 686 (some brackets added and some in original).

We have sketched the *Motta/Wells* post-conviction liberal construction rule, as originally developed in the federal courts, as follows:

The [Court of Appeals for the] Second Circuit has expressed this post-conviction liberal construction rule as follows:

> Technically, a claim that the indictment does not charge an offense may be raised on a motion in arrest of judgment.... But the courts of the United States long ago withdrew their hospitality toward technical claims of invalidity of an indictment first raised after trial, absent a clear showing of substantial prejudice to the accused—such as a showing that the indictment is "so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had."

*U.S. v. Thompson*, 356 F.2d [216,] 226 [ (2d. Cir.1965) ]. The Ninth Circuit has said that

> although such defects are never waived, indictments which are tardily challenged are liberally construed in favor of validity.... [W]hen an indictment is not challenged before the verdict, it is to be upheld on appeal if " 'the necessary facts appear in any form or by fair construction can be found within the terms of the indictment.' "

*U.S. v. Pheaster*, 544 F.2d [353,] 361 [ (9th Cir.1976) ], citing *Kaneshiro v. U.S.*, 445 F.2d [1266,] 1269, *quoting Hagner v. U.S.*, 285 U.S. 427, 433, 52 S.Ct. 417, 76 L.Ed. 861 ... (1932). In similar vein, the Sixth Circuit has recently said that "unless the defendant can show prejudice, a conviction will not be reversed where the indictment is challenged only after conviction unless the indictment cannot within reason be construed to charge a crime." *U.S. v. Hart*, 640 F.2d [856,] 857–58 [ (6th Cir. 1981) ]. *See also U.S. v. Previte*, 648 F.2d [73,] 80 [ (1st Cir.1981) ].

*Motta*, 66 Haw. at 90–91, 657 P.2d at 1020 (some ellipsis points and brackets added and some in original); *see also Wells*, 78 Hawai'i at 381, 894 P.2d at 78.

In *Jendrusch,* we explained the constitutional due process [3] implications of a defective accusation as follows:

> The accusation must sufficiently allege all of the essential elements of the offense charged. *Territory v. Henriques,* 21 Haw. 50 (1912); *Dolack v. United States,* 376 F.2d 756 (9th Cir.1967); *cf.* HRS [§ ] 702–205. This requirement obtains whether an accusation is in the nature of an oral charge, ... indictment, or complaint, and the omission of an essential element of the crime charged is a defect in substance rather than of form. A charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it cannot be sustained, *United States v. Beard,* 414 F.2d 1014 (3rd Cir.1969); *Carlson v. United States,* 296 F.2d 909 (9th Cir.1961), for that would constitute a denial of due process. *Thompson v. Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). This requirement may not be waived or dispensed with, *United States v. Tornabene,* 222 F.2d 875 (3rd Cir.1955), and the defect is ground for reversal, even when raised for the first time on appeal.... *Beard, supra; Carlson ..., supra. See also United States v. Clark,* 412 F.2d 885 (5th Cir.1969) ....

*Jendrusch,* 58 Haw. at 281, 567 P.2d at 1244; *see also Elliott,* 77 Hawai'i at 312, 884 P.2d at 375 (quoting the same (citations omitted)); *cf. State v. Israel,* 78 Hawai'i 66, 73, 890 P.2d 303, 310 (1995) (quoting the same, relying on *Elliott* and *Jendrusch,* and holding that prosecution failed to state an offense in a complaint that purported to charge "felony" offense, where language of complaint was insufficient to ensure that court had before it all facts necessary to find probable cause, as required by grand jury clause of article I, section 10 of the Hawai'i Constitution [4]).

The failure sufficiently to allege the essential elements of an offense in an oral charge, complaint, or indictment constitutes a denial of liberty without due process of law, which results from the failure to invoke the subject matter jurisdiction of the court. In other words, an oral charge, complaint, or indictment that does not state an offense contains within it a substantive jurisdictional defect, rather than simply a defect in form, which renders any subsequent trial, judgment of conviction, or sentence a nullity. *See Israel,* 78 Hawai'i at 73, 890 P.2d at 310 (quoting *Elliott,* 77 Hawai'i at 311, 884 P.2d at 374 (quoting *Jendrusch,* 58 Haw. at 281, 567 P.2d at 1244)); *Elliott,* 77 Hawai'i at 312, 884 P.2d at 375 ("the omission of an essential element of the crime charged is a defect in substance rather than form" (quoting *Jendrusch,* 58 Haw. at 281, 567 P.2d at 1244)); *Territory v. Koa Gora,* 37 Haw. 1, 6 (1944) (failure to state an offense is a "jurisdictional point"); *Territory v. Goto,* 27 Haw. 65, 102 (1923) (Peters, C.J., concurring) ("[f]ailure of an indictment[,] [complaint, or oral charge] to state facts sufficient to constitute an offense against the law is jurisdictional[;] ... an indictment[,] [complaint, or oral charge] ... is essential to the court's jurisdiction," (brackets added)).

Accordingly, as in the case of any jurisdictional defect, Hawai'i Rules of Penal Procedure (HRPP) Rule 12(b)(2) (1995) provides in relevant part that the failure to "charge an offense ... shall be noticed by the court at any time during the pendency of the proceedings," as distinguished from other "defenses and objections based on defects in the charge," such as those that are mere matters of form, which "must be raised prior to trial" or risk being waived. Thus, inasmuch as the failure to state an offense is a substantive jurisdictional defect in a criminal proceeding, it is axiomatic that the defect cannot be waived either by the defendant or by the prosecution. *See Jendrusch,* 58 Haw. at 281, 567 P.2d at 1244 ("this requirement [*i.e.,* that

**3.** Article I, section 5 of the Hawai'i Constitution (1978) provides in relevant part that "[n]o person shall be deprived of life, liberty, or property without due process of law[.]" The fourteenth amendment to the United States Constitution provides in relevant part that "nor shall any State deprive any person of life, liberty, or property, without due process of law[.]"

**4.** Article I, section 10 of the Hawai'i Constitution (1978 & 1982) provides in relevant part that "[n]o person shall be held to answer for a criminal or otherwise infamous crime, unless on a presentment or indictment of a grand jury or upon a finding of probable cause after a preliminary hearing held as provided by law[.]"

an offense must be charged] may not be waived or dispensed with").

In order not to be substantively defective, an accusation, in whatever form it is issued, must allege all of the essential elements of the offense:

[j]ust as the [prosecution] must prove beyond a reasonable doubt all of the essential elements of the offense charged, the [prosecution] is also required to sufficiently allege them and that requirement is not satisfied by the fact that the accused actually knew them and was not misled by the failure to sufficiently allege all of them.

*Israel,* 78 Hawai'i at 73, 890 P.2d at 310 (quoting *State v. Tuua,* 3 Haw.App. 287, 293, 649 P.2d 1180, 1184–85 (1982) (citations omitted)) (some brackets added and some in original); *cf.* HRPP Rule 5(b)(1) (1996) (requiring that an accused be formally arraigned and that a complaint be filed or an oral charge recited where the accusation is the commission of a non-felony offense). Where an accusation is defective because it does not state all the elements of the offense, the court does not have subject matter jurisdiction. *See Koa Gora,* 37 Haw. at 6; *Goto,* 27 Haw. at 102. That being the case, reversal of a conviction obtained on such a defective accusation does not require a showing of prejudice. *See Elliott,* 77 Hawai'i at 311, 884 P.2d at 374 (agreeing with the ICA that inasmuch as defendant could not demonstrate and did not assert prejudice where element omitted from an oral charge, "[t]he question, then, is whether the oral charges can be reasonably construed to charge [the defendant] with the offenses [of which the defendant was convicted]" (some brackets added and some in original) (citation and quotation signals omitted)); *State v. Yonaha,* 68 Haw. 586, 586–87, 723 P.2d 185, 186–87 (1986) (conviction obtained on oral charge reversed for failure to state element of intent; prejudice not addressed); *State v. Faulkner,* 61 Haw. 177, 177–78, 599 P.2d 285,

285–86 (1979) (same); *State v. Borochov,* 86 Hawai'i 183, 193, 948 P.2d 604, 614 (App. 1997) (reversing conviction because charge could not be reasonably construed to state an offense).

Hence, we have consistently articulated the *Motta/Wells* post-conviction liberal construction rule in the disjunctive, *i.e.,* that a conviction obtained on a defective accusation will be reversed only where a defendant either demonstrates prejudice *or* that the accusation, as worded, cannot reasonably be construed to state the essential elements of an offense. Thus, implicit in the *Motta/Wells* post-conviction liberal construction rule is the proposition that prejudice, insofar as it may result from a lack of notice of the charges, need not be proved if the defendant can demonstrate that an accusation fails to state an offense.[5] *See Merino,* 81 Hawai'i at 198, 915 P.2d at 672; *Wells,* 78 Hawai'i at 381, 894 P.2d at 78; *Elliott,* 77 Hawai'i at 311–312, 884 P.2d at 374–375; *Motta,* 66 Haw. at 91, 657 P.2d at 1020; *Faulkner,* 61 Haw. at 177–78, 599 P.2d at 285–86; *Jendrusch,* 58 Haw. at 281, 567 P.2d at 1244. Consequently, the failure to state an offense in an accusation that, nonetheless, results in a conviction, constitutes a defect that, in itself, requires reversal. This is because the defect, as I have noted, is not one of mere form, which is waivable, nor simply one of notice, which may be deemed harmless if a defendant was actually aware of the nature of the accusation against him or her, but, rather, is one of substantive subject matter jurisdiction, "which may not be waived or dispensed with," *see Jendrusch,* 58 Haw. at 281, 567 P.2d at 1244, and that is *per se* prejudicial, *see Motta,* 66 Haw. at 91, 657 P.2d at 1020 (quoting *Thompson,* 356 F.2d at 226).

Nonetheless, the prosecution urges, without citation to authority, that we should infer from Sprattling's trial strategy—specifically, his invocation of self-defense—that he "construed the injury [alleged] as being to the

---

5. In this connection, I note that, in *Thompson, supra,* a decision upon which this court relied in *Motta,* the United States Court of Appeals for the Second Circuit suggested that the failure to state an offense is, in and of itself, *per se* prejudicial. *Thompson,* 356 F.2d at 226 (conviction resulting from an accusation challenged for the first time

on appeal will not be reversed, "absent a clear showing of prejudice—*such as* a showing that the indictment is 'so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had' " (emphasis added)) (as quoted in *Motta,* 66 Haw. at 91, 657 P.2d at 1020).

[complainant's] body and not to [the complainant's] emotions or reputation." On the basis of this inference, the prosecution argues that we should construe "injury," as alleged in the oral charge, to mean "bodily injury" because Sprattling, himself, actually construed the accusation as such. However, inasmuch as the failure to state an offense not only generates the question whether a defendant possessed a sufficient understanding of the charges at the outset of the proceedings—a defect that is harmless if it does not prejudice the defendant—but also deprives the trial court of subject matter jurisdiction, the lack of which is prejudicial as a *per se* matter, the prosecution's argument is without merit. *See Motta*, 66 Haw. at 91, 657 P.2d at 1020 (quoting *Thompson*, 356 F.2d at 226 (failure to state an offense is prejudicial)); *see also Elliott*, 77 Hawai'i at 311, 884 P.2d at 374 (showing of prejudice resulting from lack of notice not required and reversal of conviction granted on failure of oral charge to state an offense); *Yonaha*, 68 Haw. at 586–87, 723 P.2d at 186–87 (reversing conviction for failure of charge to state an offense); *Borochov*, 86 Hawai'i at 193, 948 P.2d at 614 (same); *Koa Gora*, 37 Haw. at 6 (failure to state an offense is jurisdictional issue); *Goto*, 27 Haw. at 102 (same).

Thus, consistent with the disjunctive character of the *Motta/Wells* post-conviction liberal construction rule, I would hold that Sprattling may impeach the sufficiency of the oral charge on the sole ground that it omitted an essential element of the offense of which he was later convicted. Therefore, inasmuch as Sprattling does not claim and need not establish prejudice, his conviction must be reversed upon his demonstration that "the [oral charge] cannot within reason be construed to charge a crime." *Elliott*, 77 Hawai'i at 311, 884 P.2d at 374 (quoting *Motta*, 66 Haw. at 91, 657 P.2d at 1020 (brackets added)). Put differently, if the oral charge in the present matter cannot be con-

strued to charge an offense, then the trial court lacked subject matter jurisdiction over the proceeding and Sprattling's conviction is a nullity.

B. *The Oral Charge Failed To State An Offense.*

I now address the question whether the oral charge in the present case was fatally defective under the "reasonable construction" prong of the *Motta/Wells* post-conviction liberal construction rule. As I have indicated, Sprattling was convicted of third degree assault, in violation of HRS § 707–712(1). HRS § 707–712(1)(a) provides that "[a] person commits the offense of assault in the third degree if the person . . . [i]ntentionally, knowingly, or recklessly causes *bodily injury* to another person[,]" *see supra* note 1. (Emphasis added.) "Bodily injury," in turn, is statutorily defined as "*physical* pain, illness, or any impairment of *physical* condition." HRS § 707–700 (1993) (emphases added). Thus, pursuant to HRS § 702–205 (1993),[6] the "result[ ] of conduct" that HRS § 707–712 seeks to avoid is "*bodily* injury" (emphasis added), and it is this specific result that, as an "element" of the offense, *see supra* note 1, a defendant, by his or her conduct, must intentionally, knowingly, or recklessly cause in order to be held penally liable for committing assault in the third degree. Accordingly, the offense of third degree assault requires as an element of the offense—and, therefore, as an allegation in the oral charge—that Sprattling intentionally, knowingly, or recklessly caused a specific result: bodily injury to another person.

Given the disparity between the specific statutory definition of "bodily injury," which is restricted to "physical pain, illness, or any impairment of physical condition," *see* HRS § 707–700, and the plain meaning of "injury,"[7] which generally extends to *any* harm, detriment, or damage, be it physical or men-

---

6. HRS § 702–205 provides in relevant part that "[t]he elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct[ ] as . . . [a]re specified by the definition of the offense[.]"

7. The Oxford English Dictionary ("OED") advises that current definitions of "injury" include

"[w]rongful action or treatment; violation or infringement of another's rights; suffering or mischief wilfully and unjustly inflicted"; or, alternatively, "[h]urt or loss caused to or sustained by a person or thing; harm, detriment, damage." VII OED 981 (2d ed.1989).

tal, to another person's body, mind, purse, or rights, the two terms cannot, without more, be reasonably construed as synonymous. Thus, inasmuch as the oral charge in the present matter simply alleged that Sprattling caused an undefined injury to Calistro, Sprattling stood accused of causing some unspecified harm, detriment, or damage to Calistro's body, mind, purse, or rights. Therefore, absent some further factual detail, the oral charge failed to accuse Sprattling of causing the requisite result of conduct expressly prescribed by the statutory definition of third degree assault, to wit, a *bodily* injury—*physical* in nature rather than emotional, monetary, or otherwise. That being so, the allegation that "injury" was caused did not charge the "result of conduct" element, *see supra* note 7, of third degree assault, *see supra* note 1.

Furthermore, inasmuch as the general term "injury" is not synonymous with the more specific "bodily injury," the oral charge, as the prosecution inartfully recited it, is simply not reasonably susceptible to a construction that encompasses the required scienter. The accusation that Sprattling intended, knew, or recklessly disregarded a substantial and unjustifiable risk that his conduct would cause some diffuse and undifferentiated harm, detriment, or damage to Calistro's body, mind, purse, or rights cannot, within reason, be construed to allege with sufficient specificity that Sprattling intended, knew, or recklessly disregarded a substantial and unjustifiable risk that his conduct would cause *physical* pain or illness to Calistro or otherwise impair Calistro's *physical* condition.

Thus, even more egregious than the decisions in which we have applied the reasonable construction prong of the *Motta/Wells* post-conviction liberal construction rule to reverse convictions obtained via accusations that failed only to state the requisite state of mind, the oral charge in the present matter failed to state either the requisite state of mind *or* the result of conduct element of third degree assault. *Cf. Elliott,* 77 Hawai'i at 311–13, 884 P.2d at 374–75; *Yonaha,* 68 Haw. at 586–87, 723 P.2d at 185–86; *Faulkner,* 61 Haw. at 177–78, 599 P.2d at 285–86

(holding that oral charge alleging "you did attempt to commit theft of the property or services of another[, the] value of which is less than $50" did not allege essential element of intent of criminal attempt).

"Where the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn on the language of the statute is sufficient." *Merino,* 81 Hawai'i at 214–15, 915 P.2d at 688–89 (quoting *State v. Schroeder,* 76 Hawai'i 517, 529, 880 P.2d 192, 204 (1994) (quotation signals omitted) (quoting *State v. Torres,* 66 Haw. 281, 288–89, 660 P.2d 522, 527 (1983))); *see also Jendrusch,* 58 Haw. at 283, 567 P.2d at 1245. The language of HRS § 707–712(1), *see supra* note 1, expressly recites all of the essential elements of third degree assault. Accordingly, an accusation that simply tracked the language of HRS § 707–712(1), *see supra* note 1, would have been sufficient to state the offense of third degree assault. The deputy prosecutor in the present matter, however, did not recite the language of the statute. Instead, the prosecutor omitted a material term from the statutory definition of the offense.

Such an omission, however, might have been cured had the deputy prosecutor articulated with specificity the type of "injury" that Sprattling caused or, alternatively, the mechanism of causation. For example, an allegation that the alleged "injury" was chest pain or breathing difficulty would have permitted a construction of the alleged "injury" as a "bodily injury." Similarly, had the accusation that Sprattling "caused injury" been modified by the additional factual allegation that the injury was caused by pushing Calistro, it would then have been possible, within reason, to construe "injury" as specifically alleging "bodily injury" on the basis of the physical nature of the injury's causation. The deputy prosecutor in the present matter, however, did not modify the allegation of "injury" with *any* factual detail from which one could, within reason, construe the oral charge as alleging "bodily injury."

Nevertheless, the prosecution urges that we should take into consideration the fact that "the charge set forth the criminal, not civil, offense of assault and incorporated the phrase 'cause injury to another person'" in order to facilitate a "reasonable construction . . . [of the oral charge that] would identify the nature of the injury as being to the [complainant's] physical being; *i.e.*, a 'bodily injury.'" Moreover, the prosecution argues that "[t]he inclusion of the statutory section . . . of the offense further identifies the nature of the injury as 'bodily' and nothing else."

In *Motta*, we cited *United States v. Pheaster*, 544 F.2d 353, 361 (9th Cir.1976), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977), with approval for the proposition that, when a criminal charge "is not challenged before the verdict, it is to be upheld on appeal if the necessary facts appear in any form or by fair construction can be found within the terms of the [charge]." *Motta*, 66 Haw. at 91, 657 P.2d at 1020 (quoting *Pheaster*, 544 F.2d at 361 (internal quotation signals omitted)). We subsequently held in *Elliott* that, even under the *Motta/Wells* post-conviction liberal construction rule, "statutory references in [an] oral charge . . . [do] *not* cure the omission of essential elements in the . . . charge." *Elliott*, 77 Hawai'i at 312, 884 P.2d at 375 (emphasis added). Thus, the deputy prosecutor's recitation in the present matter of the statutory reference to third degree assault in the oral charge cannot serve as a proxy for the prosecution's obligation, at the very least, to allege facts that, by fair construction, could be construed to charge all of the essential elements of the offense. Indeed, "[t]o allow a mere statutory reference to cure the omission of essential elements would completely vitiate the rule of law developed in *Jendrusch*, *Motta*, and *Yonaha*." *Elliott*, 77 Hawai'i at 311, 884 P.2d at 374.

In summary, the question before us in the present case is whether the operative accusatory language recited in the prosecution's oral charge against Sprattling was reasonably susceptible to a construction that would narrow the *general* allegation that Sprattling intentionally, knowingly, or recklessly caused "injury" to a *specific* allegation that Sprattling intentionally, knowingly, or recklessly caused "bodily injury." I would hold, under the circumstances of the present matter, that the answer is "no." I would therefore hold that the prosecution's oral charge failed to state an offense because it failed to allege the essential element of result of conduct, *see supra* note 7, of third degree assault, *see supra* note 1. That being so, I would hold that the trial court lacked subject matter jurisdiction over the proceeding and that Sprattling's conviction must be reversed.

### C. The Majority Opinion's Achilles' Heel

The majority agrees with me that the *Motta/Wells* post-conviction liberal construction rule controls our construction of the oral charge in the present matter. Majority opinion 99 Hawai'i at 318, 55 P.3d at 282. Similarly, the majority does not dispute that an accusation that fails to state all the essential elements of an offense is jurisdictionally deficient. Where the majority parts company with me, however, is in insisting that a defendant demonstrate "prejudice" before such a jurisdictional defect would warrant reversal of a resulting conviction. *See* majority opinion at 320, 55 P.3d at 284.

Thus, the majority opinion converts the disjunctive *Motta/Wells* post-conviction liberal construction rule into a conjunctive rule that requires the defendant to demonstrate *both* "prejudice"—by which the majority means "actual prejudice" resulting from a lack of notice, which infects a defendant's ability to put forth a defense, *see id.* at 318, 55 P.3d at 282—*and* that the accusation cannot, within reason, be construed to state an offense. Never have we so articulated the rule, nor ever have we so applied the rule. I decline to do so now.

Indeed, our cases applying the *Motta/Wells* post-conviction liberal construction rule can be segregated into two groups: (1) those cases in which *both* prongs were either satisfied or not, *see e.g., Merino*, 81 Hawai'i at 212–13, 915 P.2d at 686–87 (accusation was not prejudicial and could be construed to state an offense); *Motta*, 66 Haw. at 94, 657 P.2d at 1022 (same); *Faulkner*, 61 Haw. at

178, 599 P.2d at 286 (accusation did not state an offense and was not sufficient to inform defendant of the nature of the accusation); *Jendrusch*, 58 Haw. at 280–81, 567 P.2d at 1244 (accusation prejudicial and could not be construed to state an offense), *and* (2) those cases in which *only* the reasonable construction prong was satisfied, *see e.g., Elliott*, 77 Hawai'i at 311–13, 884 P.2d at 374–76 (no actual prejudice but conviction reversed because accusation could not be construed to state an offense); *Yonaha*, 68 Haw. at 586–87, 723 P.2d at 185–86 (conviction reversed because accusation could not be construed to state an offense; prejudice not addressed). In no case has this court held, as the majority would hold here, that, although the accusation—as the oral charge here—cannot be reasonably construed to charge an offense, a conviction obtained thereon must nonetheless stand unless the defendant can establish that he or she suffered actual "prejudice." In other words, we have never held that a lack of actual prejudice justified the affirmance of a conviction obtained on a jurisdictionally defective accusation that could not be reasonably construed to charge an offense. *Elliott*, moreover, stands for the directly contrary proposition. *See Elliott*, 77 Hawai'i at 311, 884 P.2d at 374.

This is because the jurisdictional defect inherent in an accusation omitting an essential element of an offense is, in and of itself, substantially prejudicial as a *per se* matter. The accusation is substantially prejudicial, not because it fails to notify the defendant of the charges against him or her, but because it fails to allege an offense within the statutorily conferred subject matter jurisdiction of the court and, therefore, nullifies any subsequent proceedings against the defendant. What the majority misapprehends is that the *Motta/Wells* post-conviction liberal construction rule is not simply animated by a concern that our criminal justice system must avoid

convicting an accused pursuant to a Kafkaesque proceeding, in which the accused is never adequately informed of the conduct for which he or she is being criminally prosecuted, but also by a concern that we must avoid convicting an accused pursuant to a Manichaean proceeding, in which the jurisdiction of the court is never established. To permit a conviction to stand simply because "might makes right" in this particular case would demean the integrity of our courts and embed a maxim that has no place in the criminal law of Hawai'i.[8]

The majority opinion further asserts that the omission of the word "bodily" is not material to an accusation purporting to charge third degree assault. Majority opinion 99 Hawai'i at 319–320, 55 P.3d at 283–284. Despite the fact that the term "bodily injury" is a statutorily defined term, and, therefore, a legal term of art, while the term "injury" is neither, the majority asserts that the mere allegation that Sprattling caused "injury" was sufficient to allege that Sprattling had engaged in conduct that fell within the statutorily defined offense of third degree assault. To achieve this construction of "injury," the majority apparently relies on the prosecution's recital of the statutory caption—*i.e.,* the statutory name and numeration—of the offense that it sought to charge. *See id.* at 320, 55 P.3d at 284 ("While the prosecution, in this case, omitted the qualifying term "bodily," the deletion did not alter the charge or otherwise fail to specify the offense for which Sprattling was charged such that he could not reasonably construe the charge of assault in the third degree.").

Inasmuch as I am unwilling to overrule *Elliott* and its progeny *sub silentio*, I cannot rely on such bootstrapping to fashion a reasonable construction of the oral charge. *See Elliott*, 77 Hawai'i at 311–12, 884 P.2d at 374–75 ("[w]e cannot agree . . . that the stat-

8. In this regard, I note that our criminal justice system is accusatory and not inquisitorial in nature. *See e.g., Rogers v. Richmond*, 365 U.S. 534, 541, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961) (our system is "an accusatorial and not an inquisitorial system-a system in which the State must establish guilt by evidence independently and freely secured"). The state acts through the prosecutor, who serves both as a minister of justice and as a quasi-judicial officer. It is therefore the state's responsibility to charge a defendant correctly. In this connection, we have ruled that the absence of the prosecutor's signature on a complaint rendered the complaint fatally defective and the resulting judgment of conviction null and void. *State v. Knoeppel*, 71 Haw. 168, 785 P.2d 1321 (1990).

utory reference was sufficient, in accordance with the liberal rule of construction[,] . . . to provide the necessary element missing from the charges so as to sufficiently state the offenses charged"); *see also Wells,* 78 Hawai'i at 383, 894 P.2d at 80 ("an omission of an essential element from an indictment cannot be cured by merely citing the statute"); *Israel,* 78 Hawai'i at 75, 890 P.2d at 312 (relying on *Elliott* and holding that "where one offense requires the actual commission of a second underlying offense, in order to sufficiently charge the offense, it is incumbent upon the [prosecution] to allege the essential elements of the underlying offense; identification of the offense by name or statutory reference will not suffice"). Although an accusation drawn on the language of the statute defining the offense is sufficient-so long as all the elements of the offense are completely defined by the statute, *see e.g. Merino,* 81 Hawai'i at 214–15, 915 P.2d at 688–89—it is not, and cannot, be sufficient simply to recite the statutory caption, without any specific factual allegation that the accused engaged in conduct constituting the offense therein defined. To hold to the contrary, as the majority does, not only overrules *Elliott,* but also stands for the proposition that a recitation of a statutory caption could, standing alone, suffice to allege the essential elements of the offense unless a defendant could demonstrate that he or she did not understand the nature and cause of the accusation.

I cannot agree with the majority, however, for a more systemic reason. If, in the context of the present matter, the recitation that Sprattling, by causing "injury," did "commit the offense of Assault in the Third Degree, in violation of [HRS] § 707-712(1)," is held to charge all the elements of the offense because the reference to "Assault in the Third Degree" sufficiently apprised Sprattling that he stood accused of causing, specifically, "bodily injury," as defined by HRS § 707-700, then a similar accusation that merely alleges that an accused has caused "bodily injury . . ., thereby committing the offense of Assault in the First Degree, in violation of

HRS § 707-710," would, likewise, sufficiently allege of all the essential elements of first degree assault. The omission of the word "serious" from the allegation that "bodily injury" was caused would, pursuant to the majority's analysis, not be material, because the statutory reference to "assault in the first degree" would sufficiently apprise the defendant that he or she stood accused of causing "serious bodily injury," because the "word ['serious'] alone is not an essential element of the offense; it modifies '[bodily] injury.' " *See* majority opinion 99 Hawai'i at 319, 55 P.3d at 283. The absurd result would be that the prosecution could, by alleging that a defendant engaged in conduct constituting an offense of a lesser class and grade, secure a legally sufficient conviction of an offense of a greater class and grade. I do not believe that the inclusion in a charge of a statutorily defined term—be it "serious bodily injury" or "bodily injury"—that constitutes an essential element of an offense is not critical to the charge. If the legislature had not intended the language to be critical, then it would not have troubled itself with statutorily defining it.

By omitting the word "bodily" from its recitation of the oral charge in the present matter, the prosecution did not accuse Sprattling of causing the result-of-conduct element of third degree assault and, consequently, did not accuse him of committing an offense defined by the penal code. His subsequent conviction of an offense therein defined should, therefore, be reversed.

## IV. *CONCLUSION*

Based on the foregoing analysis, I would reverse the district court's judgment of conviction and sentence.