STATE OF HAWAI`I, Plaintiff-Appellee,
v.
RENATO ANCHETA, Defendant-Appellant.
No. 29039.
Intermediate Court of Appeals of Hawaii.
November 9, 2009.
On the briefs:
Phyllis J. Hironaka, Presiding Judge, Deputy Public Defender for Defendant-Appellant.
James M. Anderson, Associate Judge, Deputy Prosecuting Attorney for Plaintiff-Appellee.

MEMORANDUM OPINION
WATANABE, Presiding Judge, FUJISE and LEONARD, JJ.
Defendant-Appellant Renato Ancheta (Ancheta) appeals that part of the Judgment of Conviction and Sentence entered on February 4, 2008, by the Circuit Court of the First Circuit (Circuit Court) that convicted and sentenced him for Counts II, III, and V, as discussed below.[1]
Ancheta's convictions arise from criminal acts allegedly committed at the residence of his former spouse, Cherry Lazaro (Lazaro), on September 9, 2006. After a jury trial, Ancheta was found guilty as charged for the following offenses: Count I, Burglary in the First Degree (Burglary), in violation of Hawaii Revised Statutes (HRS) § 708-810(1)(c) (1993); Count II, Carrying, Using or Threatening to Use a Firearm in the Commission of a Separate Felony (Use of Firearm in Commission of Felony), in violation of HRS § 134-6(a) and (e) (Supp. 2005); Count III, Place to Keep Unlicensed Pistol or Revolver (Place to Keep), in violation of HRS § 134-6(c) and (e) (Supp. 2005); Count IV, Terroristic Threatening in the First Degree (Terroristic Threatening), in violation of HRS § 707-716(1)(d) (Supp. 2006); and Count V, Violation of Order for Protection, as proscribed by HRS §§ 586-5.5 and 586-11 (2006).

I. BACKGROUND
Lazaro and Ancheta met in high school and married in their early twenties. They bought a house located at 91-1733 Paeko Street in Ewa Beach. They separated in June or July of 2006. On July 17, 2006, the Family Court of the First Circuit (Family Court) granted Lazaro an Order For Protection requiring Ancheta to immediately vacate the Paeko Street residence. The order also prohibited Ancheta from, inter alia: (1) threatening or physically abusing Lazaro or anyone living with her; (2) contacting, telephoning, writing, or otherwise electronically communicating with Lazaro; (3) passing within 100 yards of Lazaro's place of employment or residence; or (4) "possessing, controlling, or transferring any ownership of any firearm, ammunition, firearm permit or license for the duration of this Order or extension thereof."
It is undisputed that on September 9, 2006, Ancheta entered the Paeko Street residence, knowing that he was in violation of the Order for Protection. Ancheta approached Lazaro, who was speaking with neighbor Orlando Pecpec (Pecpec). At trial, Lazaro testified that Ancheta was armed with a firearm, which Ancheta denied. Lazaro further testified that Ancheta repeatedly threatened to shoot her should she attempt to flee. According to Lazaro, Pecpec convinced Ancheta to relinquish the firearm. Pecpec then exited the residence with the weapon, and with the assistance of a neighbor, dislodged the ammunition.
After Pecpec's departure, Lazaro and Ancheta continued their conversation in the residence. During this time, Lazaro placed three "dropped" calls to 911. Shortly thereafter, officers from the Honolulu Police Department arrived at the residence. The responding officers retrieved the revolver from Pecpec, a .38 caliber Smith and Wesson, and placed Ancheta under arrest. Law enforcement officers conducted a firearm-license investigation and concluded that Ancheta was not licensed to carry the firearm.
On September 26, 2006, Plaintiff-Appellee State of Hawai`i (State) filed a five-count criminal complaint against Ancheta. On November 13, 2007, the jury found Ancheta guilty as charged of all counts. The Final Judgment of Conviction and Sentence was entered on February 4, 2008. Ancheta was sentenced to incarceration, as follows: Count I, ten years; Count II, twenty years with a mandatory minimum term of ten years; Count III, ten years; Count IV, five years; and Count V, one year. Ancheta filed a notice of appeal on March 3, 2007.

II. Points of Error on Appeal
Ancheta raises three points of error:
1. Prosecution of Ancheta under HRS § 134-6(a) and (e) in Count II and under HRS § 134-6(c) and (e) in Count III was barred because HRS § 134-6 was repealed in its entirety in May 2006, prior to Ancheta's September 2006 commission of the offenses; thus the Circuit Court lacked jurisdiction over those counts;
2. The Circuit Court plainly erred in imposing a ten-year mandatory minimum sentence as to Count II, ostensibly under HRS § 706-660.1, because (1) the State failed to give notice of its intention to seek a mandatory minimum sentence, either in the body of the Complaint or in a written motion filed prior to sentencing, and (2) case law prohibits imposition of a mandatory minimum sentence pursuant to HRS § 706-660.1 for the Use of Firearm in Commission of Felony offense; and
3. As to Count V, the Circuit Court failed to either require the State to specify the act which violated the Protective Order and then properly instruct the jury on that conduct element or to instruct the jury that it must be unanimous on the specific act Ancheta committed in violation of the Protective Order.

III. STANDARDS OF REVIEW
Ancheta acknowledges that he did not challenge the sufficiency of the Complaint or the imposition of the HRS § 706.660.1 mandatory minimum sentence in the court below. The State argues that: (1) Ancheta has effectively waived any right to appeal the sufficiency of the Complaint pursuant to Hawai`i Rules of Penal Procedure (HRPP) Rule 12(b)(2) (objections to charging document, other than those pertaining to jurisdiction or failure to charge an offense, must generally be raised prior to trial); and (2) Ancheta's challenge to the mandatory minimum sentence must be reviewed under the plain error standard.
We agree that Ancheta's challenge to the mandatory minimum sentence is reviewable under the plain error doctrine. See State v. Jenkins, 93 Hawai`i 87, 114, 997 P.2d 13, 40 (2000) (challenge to sentence not raised at trial level reviewed for plain error on appeal). However, the State's waiver argument must be rejected. Ancheta's objections to the sufficiency of the Complaint constitute a challenge to the subject matter jurisdiction of the Circuit Court, which, although raised for the first time on appeal, may not be waived as a matter of law. See State v. Cummings, 101 Hawai`i 139, 143, 63 P.3d 1109, 1113 (2003) (substantive defect in complaint amounts to a defect in subject matter jurisdiction, which may not be waived or dispensed with).
"The standard of review for a trial court's issuance or refusal of a jury instruction is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." State v. Balanza, 93 Hawai`i 279, 283, 1 P.3d 281, 285 (2000) (internal quotation marks and citation omitted). "Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial." State v. Sua, 92 Hawai`i 61, 69, 987 P.2d 959, 967 (1999) (internal quotation marks and citation omitted). In other words,
[E]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to conviction.
Id. (citation omitted).

IV. DISCUSSION

A. The Sufficiency of Counts II and III of the Complaint

1. Count II
In Count II of the Complaint, Ancheta was charged with a violation of HRS § 134-6(a) and (e), as follows:
Count II: On or about the 9th day of September, 2006, in the City and County of Honolulu, State of Hawaii, RENATO ANCHETA, did knowingly carry on his person or have within his immediate control or intentionally use or threaten to use a firearm while engaged in the commission of a separate felony, whether the firearm was loaded or not, and whether operable or not, thereby committing the offense of Carrying, Using or Threatening to Use a Firearm in the Commission of a Separate Felony, in violation of Sections 134-6(a) and (e) of the Hawaii Revised Statutes, and the separate felony is Burglary in the First Degree, in which the elements are that RENATO ANCHETA, also, did intentionally enter unlawfully in a building, situated at 91-1733 Paeko Street, with intent to commit therein a crime against a person, and did recklessly disregard the risk that the building was the dwelling of another, and the building is such a dwelling, thereby committing the offense of Burglary in the First Degree, in violation of Section 708-810(1)(c) of the Hawaii Revised Statutes, and any included felony offense of Burglary in the First Degree.
However, effective May 2, 2006, HRS § 134-6 was repealed in its entirety in Act 66 of 2006. See 2006 Haw. Sess. Laws Act 66, § 6 at 110, § 10 at 110. As part of the re-working of Chapter 134, the Legislature added various new sections, including § 134-A "Carrying or use of firearm in the commission of a separate felony; penalty," which was codified as HRS § 134-21. See 2006 Haw. Sess. Laws Act 66, § 1 at 105. HRS § 134-21(a) (Supp. 2006) is substantively identical to HRS § 134-6(a) (repealed)[2] and provides:
§ 134-21 Carrying or use of firearm in the commission of a separate felony; penalty. (a) It shall be unlawful for a person to knowingly carry on the person or have within the person's immediate control or intentionally use or threaten to use a firearm while engaged in the commission of a separate felony, whether the firearm was loaded or not, and whether operable or not; provided that a person shall not be prosecuted under this subsection when the separate felony is:
(1) A felony offense otherwise defined by this chapter;
(2) The felony offense of reckless endangering in the first degree under section 707-713;
(3) The felony offense of terroristic threatening in the first degree under section 707-716(1)(a), 707-716(1)(b), or 707-716(1)(d); or
(4) The felony offenses of criminal property damage in the first degree under section 708-820 or criminal property damage in the second degree under 708-821 and the firearm is the instrument or means by which the property damage is caused.
(Brackets omitted.)
Ancheta argues that he could not be prosecuted under a statute that was repealed prior to his commission of the offense because the offense no longer existed and, therefore, the Circuit Court had no jurisdiction to hold a trial, accept a guilty verdict, and sentence Ancheta on the repealed offense. Ancheta relies on an 1893 opinion of the Supreme Court of the Republic of Hawaii, The Queen v. Ah Hum, 9 Haw. 97 (1893). However, the holding in Ah Hum merely confirmed that a repealed penal statute cannot be the basis for a prosecution for the violation of that statute prior to its repeal, unless the statute contains a "savings clause" authorizing such prosecution. Id. at 98.[3] The defendant in Ah Hum was properly prosecuted under a statute in effect at the time of the commission of the crime, but later repealed because the act repealing the statute contained a savings clause for pending prosecutions. Id. at 100. The Ah Hum court, therefore, did not consider the question before us in this case.
Article I, Section 14, of the Hawai`i Constitution provides, in relevant part, that "in all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." Criminal proceedings in this jurisdiction generally begin with the filing of an indictment, an information, or a complaint, the purpose of which is to" sufficiently apprise the defendant of what he or she must be prepared to meet." State v. Sprattling, 99 Hawai`i 312, 317-18, 55 P.3d 276, 281-82 (2002) (internal quotation marks, brackets, and citation omitted); see also Hawai`i Rules of Penal Procedure (HRPP) Rule 7. The charge must "sufficiently allege all of the essential elements of the offense." Id. at 318, 55 P.3d at 282; see also HRPP Rule 7(b).
Hawai`i courts have consistently held that the failure to allege the essential elements of a criminal offense renders a complaint or charge fatally defective. See generally, Sprattling, 99 Hawai`i at 320, 55 P.3d at 284 (citing prior instances of reversals arising from defective charge, indictment or complaint). The Hawai`i Supreme Court has reasoned that such a defect in the charging document "is not one of mere form, which is waivable, nor simply one of notice, which may be deemed harmless . . . but, rather, is one of substantive subject matter jurisdiction, which may not be waived or dispensed with . . . and that is per se prejudicial." Cummings, 101 Hawai`i at 143, 63 P.3d at 1113 (internal quotations marks and citations omitted). The failure to allege a criminal offense in the charging document divests the trial court of subject matter jurisdiction and, accordingly, any subsequent conviction must be reversed as violative of due process. See id. at 142-43, 63 P.3d at 1112-13.
That said, the Hawai`i Supreme Court has fashioned a narrow standard of review when, as in this case, an indictment or complaint is initially challenged on appeal. This standard, known as the "Motta/Wells" post-conviction liberal construction rule, prohibits the reversal of convictions on the basis of errors committed in the charging document unless the defendant can sufficiently demonstrate: (1) that the indictment or complaint cannot within reason be construed to charge a crime; or (2) resulting prejudice. See State v. Merino, 81 Hawai`i 198, 212, 915 P.2d 672, 686 (1996) (citing State v. Motta, 66 Haw. 89, 90-91, 657 P.2d 1019, 1019-20 (1983); State v. Wells, 78 Hawai`i 373, 381, 894 P.2d 70, 78 (1995)).
In applying the Motta/Wells standard, the first issue is whether Count II of the Complaint can, within reason, be construed to charge the offense of Use of Firearm in Commission of Felony, now codified at HRS § 134-21(a), despite the erroneous reference to HRS § 134-6(a). We conclude that the answer is yes.
Under the plain language of HRS § 134-21(a), set forth above, the prosecution must allege and prove the following: (1) the defendant knowingly carried or had within his immediate control, or intentionally used or threatened to use, a firearm; and (2) the defendant did so while engaged in the commission of a separate felony, to the exclusion of certain enumerated felonies.
Count II of the Complaint essentially tracked the language of HRS § 134-21 (Supp. 2006), alleging that: (1) Ancheta "did knowingly carry on his person or have within his immediate control or intentionally use or threaten to use a firearm"; zw(2) Ancheta did so "while engaged in the commission of a separate felony"; and (3) "the separate felony is Burglary in the First Degree." Count II also alleged that Ancheta "did intentionally enter unlawfully in a building, situated at 91-1733 Paeko Street, with intent to commit therein a crime against a person, and did recklessly disregard the risk that the building was the dwelling of another, and the building is such a dwelling, thereby committing the offense of Burglary in the First Degree," in violation of HRS § 708-810(1)(c). These allegations expressly stated the elements of the underlying felony (Burglary in the First Degree) and reasonably alleged the material elements of Use of Firearm in Commission of Felony, as codified at HRS § 134-21(a) at the time of the commission of the crime of which Ancheta was convicted. See Cummings, 101 Hawai`i at 143, 63 P.3d at 1113 ("[w]here the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in the language of the statute is sufficient") (internal quotation marks and citation omitted, bracket in original); see also State v. Israel, 78 Hawai`i 66, 75-76, 890 P.2d 303, 312-13 (1995) (Use of Firearm in Commission of Felony allegations must identify underlying felony and essential elements thereof). Therefore, Count I can, within reason, be construed to charge a crime.
Turning to the second Motta/Wells prong, Ancheta has failed to allege, much less demonstrate, any prejudice resulting from Count II's erroneous statutory reference. The record reflects that Ancheta's counsel repeatedly referred to the operative statute, HRS § 134-21(a), in moving for a judgment of acquittal, undercutting any notion that Ancheta was unprepared to defend against HRS § 134-21(a) allegations. Second, and more importantly, the elements of a violation of HRS § 134-21(a) were duly alleged in the Complaint. Consistent with the Motta/Wells analysis, HRPP Rule 7(d) states,[4] in part:
Formal defects [in the charge], including erroneous reference to the statute, rule, regulation or other provision of law, or the omission of such reference, shall not be ground for dismissal or the charge or for reversal of a conviction if the defect did not prejudice the defendant.
Despite its erroneous statutory reference, Count II fully apprised Ancheta of the elements required for an HRS § 134-21(a) Use of Firearm in the Commission of Felony conviction, which he does not dispute. The State's failure to cite to HRS § 134-12(a) was a defect of form which did not mislead Ancheta to his prejudice. Thus, we reject Ancheta's challenge to the sufficiency of the charge in Count II.

B. Count III
In Count III of the Complaint, Ancheta was charged with a violation of HRS § 134-6(c) and (e), as follows:
Count III: On or about the 9th day of September, 2006, in the City and County of Honolulu, State of Hawaii, RENATO ANCHETA, did carry or possess a loaded or unloaded pistol or revolver without a license issued as provided in Section 134-9 of the Hawaii Revised Statutes and did fail to confine said pistol or revolver as required under Section 134-6(c) of the Hawaii Revised Statutes, thereby committing the offense of Place to Keep Pistol or Revolver, a Class B felony, in violation of Sections 134-6(c) and (e) of the Hawaii Revised Statutes.
Our analysis with respect to Count III is similar to our review of Count II, with one important difference emanating from the specific language of Count III.
As discussed above, HRS § 134-6 was repealed in its entirety by Act 66 of 2006. HRS § 134-6(c) was replaced with HRS § 134-25 (Supp. 2008) with regard to the offense of place to keep a pistol or revolver; the Legislature also enacted HRS §§ 134-23, 134-24 and 134-27 (Supp. 2008), which pertain to the place to keep firearms other than pistols or revolvers, and ammunition. See 2006 Haw. Sess. Laws Act 66, § 1 at 105-107. HRS § 134-25(a) is, on its face, substantively identical to HRS § 134-6(c) (repealed)[5] and provides:
(a) Except as provided in sections 134-5 and 134-9, all firearms shall be confined to the possessor's place of business, residence, or sojourn; provided that it shall be lawful to carry unloaded firearms in an enclosed container from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places upon change of place of business, residence, or sojourn, or between these places and the following:
(1) A place of repair;
(2) A target range;
(3) A licensed dealer's place of business;
(4) An organized, scheduled firearms show or exhibit;
(5) A place of formal hunter or firearm use training or instruction; or
(6) A police station.
"Enclosed container" means a rigidly constructed receptacle, or a commercially manufactured gun case, or the equivalent thereof that completely encloses the firearm.
With respect to Count III, Ancheta makes exactly the same argument as he did with respect to Count II. Ancheta argues that he could not be prosecuted for a Place to Keep violation under HRS § 134-6(c) because this statute was repealed prior to his commission of the offense, Thus, he argues, the offense no longer existed and the Circuit Court had no jurisdiction.
As with Count II, in light of Ancheta's failure to raise this issue in the Circuit Court, we reject Ancheta's argument that the charging complaint was fatally defective merely because of the citation to the wrong statute. We again apply the "Motta /Wells" post-conviction liberal construction rule.
We first consider whether Count III can, within reason, be construed to charge the crime of Place to Keep, in violation of HRS § 134-25(a), which was the applicable penal statute in effect at the time of the commission of the crime. Under the plain language of HRS § 134-25(a), the prosecution must allege, inter alia, that the defendant carried or possessed a pistol or revolver away from his place of business, residence, or sojourn. See also Jenkins, 93 Hawai`i at 108, 997 P.2d at 34 ("it is a material element of place to keep pistol or revolver that the firearm at issue be away from the possessor's `place of business, residence, or sojourn'").
In this case, Count III alleged that Ancheta "did carry or possess a loaded or unloaded pistol or revolver." However, Count III alleged only that Ancheta "did fail to confine said pistol or revolver as required under Section 134-6(c) of the Hawaii Revised Statutes." Count III did not allege that the firearm at issue was away from Ancheta's place of business, residence or sojourn. The reference to a repealed statute in lieu of an essential element of the offense is not a defect of mere form. Count III cannot within reason be construed to charge a violation of HRS § 134-25(a). Therefore, even under the Motta/Wells post-conviction liberal construction rule, Count III must be dismissed.

C. The Mandatory Minimum Sentence
Ancheta argues that the Circuit Court plainly erred in imposing a ten-year mandatory minimum sentence as to Count II, ostensibly under HRS § 706-660.1, because (1) the State failed to give notice of its intention to seek a mandatory minimum sentence, either in the body of the Complaint or in a written motion filed prior to sentencing, and (2) case law prohibits imposition of a mandatory minimum sentence pursuant to HRS § 706-660.1 for the Use of Firearm in Commission of Felony offense. The latter contention is dispositive.
The State concedes that HRS § 706-660.1(1) is inapplicable to Use of Firearm in the Commission of Felony convictions as a matter of law.[6] We agree. The plain language of HRS § 706-660.1[7] and the relevant case law support this conclusion. See Ambrosio, 72 Haw. at 497, 824 P.2d at 108 (HRS § 706-660.1 enhanced sentencing is inapplicable to Use of Firearm in Commission of Felony conviction). Thus, we vacate the ten-year mandatory minimum sentence on Count II.

D. The Jury Instruction on Count V
Ancheta contends that his conviction for Violation of Protective Order must be vacated because of the Circuit Court's "failure to either require the State to elect the particular act [which violated the Protective Order]. . . or to provide a jury instruction (or verdict form) which specifically required unanimous agreement on that act." Ancheta argues that he was entitled to an "Arceo" unanimity instruction.
The right of a criminal defendant to a unanimous verdict is guaranteed by article I, sections 5 and 14 of the Hawai`i Constitution. See State v. Jones, 96 Hawai`i 161, 169, 29 P.3d 351, 359 (2001). Within this context, the Hawai`i Supreme Court, in the seminal decision State v. Arceo, 84 Hawai`i 1, 30, 32-33, 928 P.2d 843, 874-875 (1996), held that:
[W]hen separate and distinct culpable acts are subsumed within a single count charging a sexual assault  any one of which could support a conviction thereunder  and the defendant is ultimately convicted by a jury of the charged offense, the defendant's constitutional right to a unanimous verdict is violated unless one or both of the following occurs: (1) at or before the close of its case-in-chief, the prosecution is required to elect the specific act upon which it is relying to establish the "conduct" element of the charged offense; or (2) the trial court gives the jury a specific unanimity instruction, i.e., an instruction that advises the jury that all twelve of its members must agree that the same underlying criminal act has been proved beyond a reasonable doubt [an Arceo instruction].[8]
The purpose of an Arceo instruction is "to eliminate any ambiguity that might infect the jury's deliberations respecting the particular conduct in which the defendant is accused of engaging and that allegedly constitutes the charged offense." State v. Valentine, 93 Hawai`i 199, 208, 998 P.2d 479, 488 (2000). In this case, Ancheta repeatedly conceded to the jury, through direct testimony and counsel, that he knowingly violated the Order for Protection by contacting Lazaro at her residence. This unqualified concession, which identified a distinct culpable act, clearly eliminated any ambiguity as to the manner in which Ancheta violated the Order for Protection. Given Ancheta's testimony, there simply was no threat of jury confusion or inconsistent factual findings with regard to the Violation of Protection Order conviction.
Alternatively, and assuming arguendo that Ancheta was entitled to an Arceo instruction, any error in the jury instructions was harmless beyond a reasonable doubt. As noted above, the Order for Protection prohibited Ancheta from: (1) threatening or physically abusing Lazaro; (2) contacting Lazaro; (3) passing within 100 yards of Lazaro's place of employment or Residence; and (4) possessing any firearm or ammunition for the duration of the Order. In convicting Ancheta of Burglary, Use of Firearm in Commission of Felony, and Terroristic Threatening in the First Degree, the jury was required to unanimously find, inter alia, that, on September 9, 2006: (1) Ancheta intentionally entered Lazaro's residence; (2) threatened Lazaro with bodily injury; and (3) carried a firearm. As each of these unanimous factual findings could properly support Ancheta's Violation of Protective Order conviction, we concluded that there was no prejudice from the omission of the Arceo instruction. Accordingly, we affirm the conviction under Count V.

V. CONCLUSION
For these reasons, we affirm the Circuit Court's February 4, 2008 Judgment of Conviction and Sentence with respect to Counts I, IV, and V, we vacate the conviction on Count III and remand for dismissal of that count, and we affirm the conviction on Count II, but vacate the imposition of a mandatory minimum ten-year term as to Count II and remand for re-sentencing on Count II.
NOTES
[1] The Honorable Steven S. Alm presided.
[2] Prior to its repeal, HRS § 134-6(a) (Supp. 2005) provided:

§ 134-6 Carrying or use of firearm in the commission of a separate felony; place to keep firearms; loaded firearms; penalty. (a) It shall be unlawful for a person to knowingly carry on the person or have within the person's immediate control or intentionally use or threaten to use a firearm while engaged in the commission of a separate felony, whether the firearm was loaded or not, and whether operable or not; provided that a person shall not be prosecuted under this subsection where the separate felony is:
(1) A felony offense otherwise defined by this chapter;
(2) The felony offense of reckless endangering in the first degree under section 707-713;
(3) The felony offense of terroristic threatening in the first degree under section 707-716(1)(a), 707-716(1)(b), and 707-716(1)(d); or
(4) The felony offenses of criminal property damage in the first degree under section 708-820 and criminal property damage in the second degree under section 708-821 and the firearm is the instrument or means by which the property damage is caused.
(Brackets omitted.)
Prior to Act 66, HRS § 134-6(e) (Supp. 2005) provided in relevant part that: "Any person violating subsection (a) or (b) shall be guilty of a class A felony." With the passage of Act 66, HRS § 134-21(c) (Supp. 2006) provides: "Any person violating this section shall be guilty of a class A felony."
After the time frame relevant to this case, the reference in HRS § 134-21(a)(3) to section 707-716(1)(d) was changed to section 707-716(1)(e) to reflect a modification in section 707-716(1). See HRS § 134-21(a) (Supp. 2008). This further modification has no impact on our analysis in this case.
[3] We agree with Ancheta that the savings clause in Act 66 does not support a conviction under HRS § 134-6 for crimes committed after the date of that section's repeal.
[4] HRS § 806-27 (1993) also states, inter alia: "No indictment shall be deemed insufficient, nor shall the trial, judgment, or other proceedings thereon be affected, by reason of any defect or imperfection in matter or form, which shall not prejudice or tend to prejudice the defendant."
[5] Prior to its repeal, HRS § 134-6(c) (Supp. 2005) provided:

(c) Except as provided in sections 134-5 and 134-9, all firearms and ammunition shall be confined to the possessor's place of business, residence, or sojourn; provided that it shall be lawful to carry unloaded firearms or ammunition or both in an enclosed container from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places upon change of place of business, residence, or sojourn or between these places and the following: a place of repair; a target range; a licensed dealer's place of business; an organized, scheduled firearms show or exhibit; a place of formal hunter or firearm use training or instruction; or a police station. "Enclosed container" means a rigidly constructed receptacle, or a commercially manufactured gun case, or the equivalent thereof that completely encloses the firearm.
Prior to Act 66, HRS § 134-6(e) (Supp. 2005), provided in relevant part: "Any person violating this section by carrying or possessing a loaded firearm or by carrying or possessing a loaded or unloaded pistol or revolver without a license issued as provided in section 134-9 shall be guilty of a class B felony." With the passage of Act 66, HRS § 134-25(b) (Supp. 2008), concerning the place to keep a pistol or revolver provides (emphasis added): "Any person violating this section by carrying or possessing a loaded or unloaded pistol or revolver shall be guilty of a class B felony."
[6] The State suggests that the mandatory minimum term should have been applied to the underlying felony of Burglary (Count I), not the firearm charge. It does not appear from the record that the State sought a mandatory minimum term in conjunction with Count I; nor did the State file a cross-appeal challenging the sentence on Count I. Therefore, we will not entertain the State's request to vacate Ancheta's sentence on Count I, as well as Count II, and remand for the possible imposition of a mandatory minimum term on Count I. See also State v. Navor, 82 Hawai`i 158, 158-59, 920 P.2d 372, 372-73 (App. 1996).
[7] HRS § 706-660.1 (1993) provides in relevant part:

§ 706-660.1 Sentence of imprisonment for use of a firearm, semiautomatic firearm, or automatic firearm in a felony. (1) A person convicted of a felony, where the person had a firearm in the person's possession or threatened its use or used the firearm while engaged in the commission of the felony, whether the firearm was loaded or not, and whether operable or not, may in addition to the indeterminate term of imprisonment provided for the grade of offense be sentenced to a mandatory minimum term of imprisonment without possibility of parole or probation the length of which shall be as follows: . . . .
(b) For a class A felonyup to ten years;
(c) For a class B felonyup to five years;
[8] Hawai`i appellate courts have subsequently expanded the Arceo decision, which involved sexual assault, to other criminal offenses where multiple predicate acts and jury unanimity were at issue. See generally, State v. Kassebeer, 118 Hawai`i 493, 511, 193 P.3d 409, 423 (2008) (within context of kidnapping charge, holding that failure to provide Arceo instruction constituted plain error); State v. Rapoza, 95 Hawai`i 321, 328-30, 22 P.3d 968, 975-77 (2001) (within context of assault charges, act of discharging a firearm multiple times did not amount to "separate and distinct culpable acts" requiring Arceo instruction).